K4 ENTERPRISES, INC., *et al.*, Plaintiffs-Appellees, v. GRATER, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—07—2792

Opinion filed August 19, 2009.

Murphy & Hourihane, L.L.C., of Chicago (Eugene E. Murphy, Jr., John N. Hourihane, Jr., and John H. Scheid, Jr., of counsel), for appellants.

Rusin, Maciorowski & Friedman, Ltd., of Chicago (Gregory G. Vacala and Sarah M. Abrams, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Defendants Grater, Inc., and James T. Zavacki appeal from an order of the circuit court requiring them to comply with terms of an oral settlement agreement that the court found they entered into with plaintiffs K4 Enterprises, Inc., and MS Produce, Inc., and from an order granting plaintiffs' motion to accelerate payment and entering judgment in the amount of $2,800,000, the full amount due under that agreement. On appeal, defendants contend that the parties did not have an oral settlement agreement because there was no meeting of the minds, and alternatively, that if the parties did have a settlement agreement, the trial court erred in ordering that payments due under that agreement be accelerated. Defendants also contend that the trial court erred in granting plaintiffs' motion to enforce the settlement agreement without first holding an evidentiary hearing and that the trial judge should not have heard the motion to enforce because he was a material witness and had engaged in arbitrary and injudicious conduct during the proceedings. For the reasons set forth below, we affirm the trial court's order finding that the parties had an oral settlement agreement but vacate its subsequent order accelerating payment.

## BACKGROUND

On June 7, 2007, plaintiffs and defendants were engaged in a jury

trial[1] in the circuit court of Cook County in the courtroom of Judge William Taylor. On that date, James Kubeck, plaintiffs' principle, and James Zavacki, owner of Grater, Inc., met with Judge Taylor in his chambers to negotiate an oral settlement agreement. Their respective attorneys were not present. After the settlement negotiations were completed, Judge Taylor reconvened the trial, informed the jury that the matter had been settled, discharged the jurors, and entered an order dismissing the case in its entirety. Neither the parties nor the judge made a written record of the terms of the June 7 oral settlement agreement.

On June 20, 2007, plaintiffs' counsel sent a letter to Judge Taylor along with a draft of the settlement agreement. In the letter, plaintiffs' counsel asked the court to continue the status scheduled for June 21, 2007, and stated, "Last week I circulated the enclosed settlement agreement. There has been considerable disagreement as to the terms." In the letter, plaintiffs' counsel also requested that "the status quo *** be maintained until these details are worked out and the settlement agreement is signed."

The case was continued until July 3, 2007, when the plaintiffs made an oral motion to enforce the settlement agreement. Defendants contend that on that date the parties advised the trial court that there was some disagreement regarding the terms of the oral settlement agreement, that the court attempted to mediate a new settlement and that, afterwards, Judge Taylor entered an agreed order as follows:

> "This matter coming to be heard on status regarding oral settlement agreement of June 7, 2007, by agreement of the parties who are all present,
>
> It is ordered that Plaintiffs' motion to enforce settlement is entered and continued to Thursday, September 6, 2007 at 10:30 a.m. In the event Defendants tender $2,400,000 in cash by wire transfer to Johnson & Bell before said date, Plaintiffs will be satisfied and the parties shall execute mutual releases and stipulations to dismiss all cases with prejudice."

No report of the July 3 proceedings was made, and plaintiffs contend that there is nothing in the record to support defendants' assertion that the parties entered into a new settlement agreement on that date. Instead, plaintiffs maintain that the July 3 order simply continued the hearing on the enforcement of the June 7, 2007, settlement agreement until September 6, 2007.

---

[1]Since 2004, plaintiffs, third-party defendant and defendants have been engaged in a lawsuit in the circuit court of Cook County entitled K4 Enterprises, Inc. v. Grater, Inc., Nos. 04 L 3746, 06 CH 17421, 05 L 5223 (Cir. Ct. Cook Co.).

On September 5, 2007, plaintiffs filed a motion to enforce the settlement, stating that "Plaintiffs request, due to repeated defiance of Defendants and their attorneys to Your Honor's brokered settlement agreements *and* Your Honor's representations of the consequences if they defaulted, as follows" (emphasis in original):

> "Judgment in the amount of $4.3 million dollars (the $2.4 million and the default penalties) for Plaintiffs' [*sic*] against all Defendants, jointly and individually; monetary and other sanctions as Your Honor deems just; award of attorneys fees and costs to Plaintiffs, for the June trial, July 3rd appearance, and this hearing; and an Order that Grater, Inc. and James T. Zavacki Jr., jointly and individually, are responsible for settling *Castle Cheese, Inc. v. MS Produce, Inc., et al* (2—04—cv—878 WD Penn) and *CVS Foods, Inc. and MD Produce, Inc. v. Whitehall Specialties, Inc. and Grater, Inc.* (05 CH 14982)."

On September 10, 2007, defendants filed a motion to substitute counsel. At a status hearing on September 13, 2007, the court asked defendants if they were prepared to proceed on a hearing on the motion to enforce. When substitute counsel said they were not, the court denied their motion to substitute stating, "I will not allow you to delay the case because the motion today is to enforce the settlement. So the motion for substitution is denied." As part of the September 13 order, the court also entered an order, on its own motion, enjoining defendants from transferring assets until the completion of the hearing on the motion to enforce.

On September 19, 2007, the parties appeared before Judge Taylor on plaintiffs' motion to enforce the settlement agreement. At that time, defendants presented an emergency petition for substitution of judge. That matter was transferred to Presiding Judge William D. Maddux, who denied the motion and transferred the case back to Judge Taylor.

When Judge Taylor reconvened proceedings later that day, he granted defendants' new counsel leave to appear and defendants' motion to vacate the September 13 injunction order. The court then proceeded to plaintiffs' motion to enforce the settlement. Defense counsel requested leave to respond in writing and to have an evidentiary hearing on the motion and had the following exchange with Judge Taylor:

> "THE COURT: I don't understand the evidentiary hearing because this is a motion to enforce a settlement which was done in chambers in front of me. And while the parties disagree on what the terms were, all I have to do is tell you what the terms were. And while the attorneys wrote up very nice legalese documents and while both sides objected to the extra legalese, the terms are the terms.

DEFENSE COUNSEL: My concern with respect to that, Judge, is your understanding of the terms and the definition, more importantly, of the terms, may not—

THE COURT: It's a money amount, not a definition. A dollar is a dollar.

DEFENSE COUNSEL: Murphy: With respect to who is paying and how it is paid— *** and certain issues brought up before Your Honor with respect to I don't know that I can answer that question right now because there are tax consequences of the payment.

THE COURT: Here's the problem that you had with that is that we have two settlement agreements. We have one that's for $2.8 million and some other terms and we have one for $2.4 million that was contingent on being paid by September 4 or whatever it was. Your client is confusing the two settlements. The tax consequences question didn't come up until the second discussion. The motion today is enforcing the first one, which had no tax discussions at all. So while you guys would like to go around and look for the different tax consequences and how it would help your client, it was not part of the negotiations. So it's not an issue.

MR. MURPHY: If there was—By virtue of there being a second settlement conference, Judge, means that there wasn't an agreement in the first settlement agreement—

THE COURT: There was."

The court then denied defense counsel's request to provide evidentiary testimony but offered defendants the opportunity to make an offer of proof. Defense counsel, however, stated that he wanted to call the judge as a witness and that without the judge's testimony he was unable to make an offer of proof, because he would be speculating as to who he would call as witnesses.

Afterwards, Judge Taylor announced the terms of the settlement agreement in open court as follows:

"Since there were two settlement agreements and I find that the parties have somewhat confused one settlement agreement versus the second attempt to settle and that if the second settlement was not paid by September 4, that I was going to have a hearing on the first settlement and only to the terms that both parties in my chambers had agreed to.

They agreed to, Point 1, that the defendant would pay $1.2 million on or before September 4, 2007. And that will be equal payments of $100,000 on or before October 1, 2007; January 1, 2008; April 1; July 1; October 1, 2008; January 1, 2009; April 1, 2009; July 1; October 1, of 2009; then January 1 of 2010; April 1, July 1; October 1 of 2010. And then there would be payment of 100,000 on January 1, 2011; April 1; and July 1, 2011, which would be a total amount of $2.8 million.

\*\*\* If there was a breach, there was an agreement that all payments would be accelerated. Since, technically, there is already a breach of the September 4, 2007 payment, I'm going—and the cost of the litigation that's been going on since that time, I'm going to give Mr. Zavacki another week to make that payment, which will be due then on September 26th. If he does not make the payment by September 26, then all payments are accelerated and the full amount will be judgment for the 2.8 million.''

Judge Taylor also stated that the amounts due under this settlement agreement were owed solely by defendants Grater, Inc., and James T. Zavacki, in case number 04 L 3746, and not the defendants in the other related cases involving this matter. He then dismissed case number 04 L 3746 with leave to reinstate in the event the judgment was not satisfied. Judge Taylor subsequently entered a written order stating that the judgment was effective immediately on the terms and conditions announced in open court.

On September 26, 2007, defendants filed a motion to reconsider the denial of their motion for substitution of judge, which Judge Maddux denied. Defendants also filed a motion to reconsider the granting of motion to enforce and a motion for a finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), to set an amount of an appeal bond and to stay enforcement of judgment pending appeal. On October 1, 2007, plaintiff filed a motion to accelerate payments pursuant to the judgment of September 19, 2007. On October 3, 2007, Judge Taylor issued an order denying defendants' motion to reconsider and their request for a Rule 304(a) finding, for an appeal bond amount and for a stay of enforcement of the judgment pending appeal. The court granted plaintiffs' motion for acceleration of payment, entering judgment against defendants in the amount of $2,800,000 plus interest. Defendants filed their notice of appeal on October 9, 2007. On October 19, 2007, this court set the amount of defendants' appeal bond at $3,640,000 and stayed enforcement of the judgment until November 9, 2007. Defendants posted the appeal bond, and on November 21, 2007, this court entered an order continuing the stay of enforcement of the judgment pending this appeal.

## STANDARD OF REVIEW

When presented with a challenge to a trial court's determination that parties reached an oral settlement agreement, a reviewing court will not overturn that finding unless it is against the manifest weight of the evidence. *Webster v. Hartman*, 309 Ill. App. 3d 459, 460 (1999). A finding regarding the validity of a settlement agreement is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or where a decision is palpably erroneous and wholly

unwarranted. *Kulchawik v. Durabla Manufacturing Co.*, 371 Ill. App. 3d 964, 969 (2007).

## ANALYSIS

Plaintiffs initially assert that defendants waived any objections to the oral settlement agreement by failing to preserve the record of the settlement negotiations or make any objections to the settlement process. Plaintiffs argue that the absence of a draft order, transcript or bystander's report of the June 7 proceedings means this court must presume that the trial court's ruling was correct. Our supreme court has held that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

The sufficiency of the record to address a claim of error turns on the question presented on appeal. In *Foutch*, the question was whether the trial court abused its discretion in denying the motion to vacate an *ex parte* judgment. *Foutch*, 99 Ill. 2d at 391-92. Absent a transcript of the hearing below where evidence was heard, review for an abuse of discretion of the trial court's denial of the motion, where no specific grounds for the denial were given, was foreclosed. *Foutch*, 99 Ill. 2d at 392. In this case, the issue raised by defendants is whether the parties had a meeting of the minds necessary for an enforceable settlement agreement. The record here is sufficiently complete to address the merits of the appeal.

We now turn to the primary question raised before this court: whether the trial court erred in finding that the parties entered into an enforceable settlement agreement in its chambers on June 7, 2007. A settlement agreement is in the nature of a contract and is governed by principles of contract law. *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement. *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146 (1997). For a contract to be enforceable, the material terms of the contract must be definite and certain. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 314 (1987). "[A] contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.' " *Midland Hotel Corp.*, 118 Ill. 2d at 314, quoting *Morey v. Hoffman*, 12 Ill. 2d 125, 131 (1957).

Defendants rely on *Quinlan v. Stouffe*, 355 Ill. App. 3d 830 (2005), to assert that there was no meeting of the minds regarding the material terms of the June 7, 2007, oral agreement and thus no enforceable contract. In *Quinlan*, plaintiff sued defendants for reimbursement for work done on a gravel driveway used by all of the parties. The parties and their attorneys attended a settlement conference to resolve the dispute. Neither the judge nor a neutral mediator was present. Afterward, plaintiff's counsel sent a letter to defendants' counsel, stating, in part, " '[c]onsistent with this morning's settlement agreement, the trial in the above referenced matter has been rescheduled.' " *Quinlan*, 355 Ill. App. 3d at 833. Plaintiffs' counsel then faxed a draft "Settlement Agreement" to defendants' counsel, and defendants responded by sending a counterproposal. A few days later, plaintiff's counsel informed defendants that plaintiff would dismiss her suit in return for a payment and that " '[t]here will be no agreement.' " *Quinlan*, 355 Ill. App. 3d at 834. About a month later, defendants filed a counterclaim for enforcement of an oral settlement agreement, arguing that the parties had reached an agreement during the settlement conference and that plaintiff breached that agreement. Following a bench trial, the court entered an order stating, in part, that " 'although an agreement may have been reached *** all parties attempt[ed] to modify that agreement and effectively withdrew from the agreement.' " *Quinlan*, 355 Ill. App. 3d at 835. The court then ordered defendants to pay one-third of their share of repairs.

Defendants appealed, and this court affirmed, finding that the parties did not have an enforceable settlement agreement because they did not have a meeting of the minds on all material terms. *Quinlan*, 355 Ill. App. 3d at 839. Furthermore, this court said that even if the parties reached an agreement, their subsequent actions, including the plaintiff's faxed settlement agreement, defendants' counterproposal and plaintiff's rejection of that counterproposal and offer to dismiss in exchange for payment, indicated that they effectively withdrew from that agreement. *Quinlan*, 355 Ill. App. 3d at 839-40. The court also said that even if the parties believed they had an agreement, a contract is not valid without enforceable essential terms, and the record did not reflect which version the parties agreed to during the settlement meeting. *Quinlan*, 355 Ill. App. 3d at 839.

Defendants contend that in this case, as in *Quinlan*, the parties' actions after the June 7 settlement conference indicate that there was no meeting of the minds as to what the parties had agreed to and, therefore, no settlement agreement. First, defendants maintain that the record shows that there were at least three different versions of the purported June 7 settlement agreement: the draft written by

plaintiffs' counsel and enclosed in a letter to the trial judge on June 20, 2007, the agreement entered by the trial court on September 19, 2007, and the defendants' version, which was not provided in writing, but which defendants claim was discussed with Judge Taylor. According to defendants, these disparate views of the oral settlement agreement cannot be reconciled.

Defendants also contend that when plaintiffs' counsel circulated a draft of the settlement agreement to all of the parties, counsel for two codefendants sent responses to plaintiffs' counsel stating that their clients did not agree with certain terms. This was reflected, defendants assert, in the June 20 letter plaintiffs' counsel sent to the judge stating that there had been "considerable disagreement as to the terms" of the oral agreement. Furthermore, defendants contend that on July 3, 2007, after being informed that the parties had a disagreement over the terms of the June 7 agreement, the trial court attempted to broker a new settlement agreement. Defendants contend that the trial court memorialized the new settlement agreement in an order but maintain that in doing so, the judge imposed his own version of the settlement agreement, which differs from every other version in the record. According to defendants, the trial court's lack of clarity regarding the terms of the agreement and the court's contradictory statements in open court confirm the lack of mutual consent regarding the terms of the oral agreement. Therefore, defendants assert, as in *Quinlan*, this court should find that the parties' actions after June 7 indicate that there was no mutual assent as to what the parties agreed to.

However, the case before this court can be distinguished from *Quinlan* in one key respect: Judge Taylor was present during the settlement negotiations and found that the parties had reached a settlement agreement at that time. As a result, the instant case is more analogous to our holding in *Rose v. Mavrakis*, 343 Ill. App. 3d 1086 (2003). In *Rose*, the trial court entered an order scheduling a settlement conference for related cases. Although the record did not contain a transcript of the proceedings or a written order from the settlement conference, all parties agreed that the settlement conference took place. Afterwards, one of the parties filed a motion to enforce the stipulated settlement agreement, alleging that he and respondent "entered into a 'hand shake agreement' to settle their disputes" and that the "precise terms and details of the agreement reached" were "to be memorialized in writing and presented to the Court for its approval." *Rose*, 343 Ill. App. 3d at 1089. The movant further alleged that "both parties had agreed to all the material terms in the Agreement" but that, nonetheless, respondent refused to sign a written agreement. *Rose*, 343 Ill. App. 3d at 1089. Respondent, however, denied

that the parties had reached a settlement agreement and asserted instead that after the settlement conference, the parties left the court's chambers "recognizing that it was essential that they enter into a written understanding in order to resolve numerous essential terms that had yet to be addressed." *Rose*, 343 Ill. App. 3d at 1089.

The trial court granted the motion to enforce the settlement agreement because "extensive pretrial settlement conferences" had been conducted in his chambers, that "at times" the attorneys for all parties were present and "at times" the parties themselves were present in chambers while the settlement conference took place. The judge acknowledged that he was not always present during the settlement conference, but found that an agreement had been reached "as to the essential terms of a settlement." *Rose*, 343 Ill. App. 3d at 1089.

On appeal, appellants asserted that the trial court erred in ordering the parties to perform under the oral settlement agreement because it did not contain certain material terms and, as such, did not constitute a contract. The appellate court affirmed the trial court, finding that a settlement agreement that sets forth essential and material obligations of the parties is enforceable even if some of the terms are missing or left to be agreed upon. *Rose*, 343 Ill. App. 3d at 1091.

Defendants correctly contend that this case is distinguishable from *Rose* in that the parties in that case did not dispute that an oral settlement agreement had been reached in chambers. However, in affirming the trial court's finding that the parties had an enforceable agreement as to "the essential terms of settlement," this court stated that "[w]hen parties reach a settlement agreement during a court-mandated settlement conference conducted in the judge's chambers and state the terms of that agreement in the judge's presence, there is no danger of enforcement of a contract which was, in fact, never made. This is so even if no transcript or written order memorializing the agreement is prepared on the date the agreement is reached. The possibility of fraud is negated in that the trial judge can, as here, resolve any disputes as to whether an agreement was in fact reached or the content of that agreement." *Rose*, 343 Ill. App. 3d at 1097. Similarly, in this case, although no transcript or record of the parties' June 7 settlement negotiations was made, Judge Taylor's presence and his conclusion that the parties reached an agreement is sufficient to ensure that a contract was made.

A recent decision of the Seventh Circuit Court of Appeals in *Gevas v. Ghosh*, 566 F.3d 717 (7th Cir. 2009), provides further support for finding that defendants may not object to the trial court's finding that there was an oral settlement agreement and to the terms of that agree-

ment as recalled by the judge. In *Gevas*, plaintiff filed a complaint under 42 U.S.C. §1983 claiming that defendants, Dr. Parth Ghosh, and other prison staff members and administrators were deliberately indifferent to his medical needs when they refused to address his requests to treat a painful hand injury and a lump on one of his legs. The district judge referred the case to a magistrate judge, who held a telephonic conference with the parties during which an agreement was supposedly reached. No court reporter was present nor was a transcript made. The magistrate judge made a minute entry stating that the case settled during a conference that day and that all matters relating to the referral had been resolved. The following month, Gevas sent a letter to the magistrate judge stating that he would not sign the release and settlement agreement principally because the magistrate judge had rejected the merits of his claim without giving him a chance to present his case. Dr. Ghosh moved to enforce the settlement agreement. After a hearing, the magistrate judge granted the motion to enforce the settlement and ordered Gevas to sign the release and settlement agreement within 30 days or the case would be dismissed.

On appeal, Gevas argued that he never actually agreed to the terms of the settlement. The court of appeals held that "Gevas's argument fails because we have no way in which to substantiate his denial that he ever agreed to a settlement." *Gevas*, 566 F.3d at 719. The court stated that "a judge's failure to record such an understanding does not invalidate the settlement." *Gevas*, 566 F.3d at 719, citing *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490-91 (7th Cir. 2002). "[B]oth parties assumed the risk, when neither asked that any part of the discussion be placed on the record, that the judge would recall the discussion differently than they did." *Gevas*, 566 F.3d at 719, citing *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490-91 (7th Cir. 2002). "A party that has a chance to place any part of the discussion on the record 'will not be heard to complain that the judge's recollection is inaccurate, least of all in a case in which the party has nothing more than its own say-so to cast doubt on the accuracy of that recollection.' " *Gevas*, 566 F.3d at 719, quoting *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 492 (7th Cir. 2002). The court stated that "[t]his is especially the case here, where Gevas bears the burden of providing the court with a record permitting meaningful review of the alleged error." *Gevas*, 566 F.3d at 719, citing *Piggie v. Cotton*, 342 F.3d 660, 663 (7th Cir. 2003).

Similarly, we find in this case that the trial court's failure to record the parties' June 7 oral settlement agreement does not invalidate that agreement. Defendants had opportunities to place the settlement discussions on the record, either by asking that a court reporter be

present in chambers to record the discussions or by asking that the terms of the agreement be placed on the record at the time the trial court dismissed the underlying lawsuit and informed the jury that the case had settled. In both instances, defendants failed to make any such request. Moreover, during the September 19 hearing on the motion to enforce, the trial court permitted defendants to make an offer of proof regarding what their witnesses would testify to regarding the terms of the agreement. Defendants, however, refused to do so without first hearing what the judge's testimony would be. Because defendants had opportunities to put the terms of the oral settlement agreement on the record, they cannot now complain that the judge's recollection, which differs from theirs, is inaccurate, as both parties assumed that risk.[2] And, as noted in *Gevas*, this is especially the case where defendants had the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. *Wackrow v. Niemi*, 231 Ill. 2d 418 (2008).

Defendants also contend that the trial court erred in refusing to hold an evidentiary hearing on plaintiffs' motion to enforce the judgment. Generally, when a trial court refuses evidence, no appealable issues remain unless a formal offer of proof is made. *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 26 (2008). The purpose of an offer of proof is to inform the trial court, opposing counsel, and a reviewing court of the nature and substance of the evidence sought to be introduced. *Torres*, 383 Ill. App. 3d at 26. An adequate offer of proof is the key to preserving a trial court's error in excluding evidence. *Jones v. DHR Cambridge Homes, Inc.*, 381 Ill. App. 3d 18, 32 (2008).

■ During the hearing on the September 19, 2007, motion to enforce the settlement agreement, defense counsel sought leave to provide evidentiary testimony. The trial judge denied that request but offered defense counsel an opportunity to make an offer of proof. In response, defense counsel informed the judge that he wanted to call the judge as a witness. The trial judge stated that he would not be a witness, but offered defendants an opportunity to make an offer of proof regarding the testimony of other witnesses. Defense counsel declined to do so, stating that "without the actual testimony of Your Honor, I'm unable to make a proffer. With Your Honor's unwillingness to provide the testimony, I'm unable to make a proffer." Defense counsel had an opportunity to place on the record, for review by this

---

[2]For the same reason, we cannot address defendants' assertion that on July 3, 2007, the court attempted to negotiate a new settlement agreement with the parties, since neither party made a record of the proceedings that occurred on that date.

court, what other witnesses, namely, his client, James Zavacki, would testify to with regard to what occurred during the oral settlement negotiations in the judge's chambers. Defense counsel refused to do so and cannot now be heard to complain that the trial court's recollection of those settlement negotiations was inaccurate. Therefore, because defendants refused to make an offer of proof when given the opportunity to do so, we find that they forfeited their objection to the trial court's denial of an evidentiary hearing. *Torres*, 383 Ill. App. 3d at 26. For the foregoing reasons, we find that the trial court did not err in entering an order on September 19, 2007, enforcing the terms of the June 7, 2007, oral settlement agreement.

Defendants next assert that even if the trial court did not err in finding that the parties had a settlement agreement, the trial court did err in granting plaintiff's motion to accelerate payments owed under the terms of the oral settlement agreement and entering a judgment for $2,800,000 on October 3, 2007. Defendants assert that on September 26, 2007, they filed a proper motion to reconsider the court's September 19 order enforcing the settlement agreement. While that motion was pending, the first two installments under the agreement came due and when defendants did not pay them, the trial court entered its October 3 order accelerating all of the payments. Defendants assert that if this court finds that a settlement was reached on June 7, they should be given the opportunity to comply with its terms and not be penalized by having the payments accelerated. Because we find that the record does not show that the parties agreed to an acceleration clause when they negotiated their settlement agreement, we agree with defendants and vacate that portion of the October 3 order accelerating payment.

On June 20, 2007, plaintiff's counsel sent a letter to Judge Taylor stating that there had been "considerable disagreement as to the terms" of the settlement agreement and requesting "that the status quo should be maintained until these details are worked out and the settlement agreement is signed." Then during the September 19, 2007, hearing on plaintiffs' motion to enforce the settlement agreement, in response to a question from plaintiffs' counsel regarding acceleration, the trial court stated, "Acceleration was discussed. It was absolutely discussed by plaintiffs' counsel. I did not get an agreement from Mr. Zavacki that he would do the accelerator, and I believe—I'm not so clear on that, but I know that there was not an agreement on that between the parties in front of me. There could have been an agreement later off to the side, but it was not stated in front of me." Then, despite finding that the parties had not agreed on an acceleration clause, on October 3, 2007, the trial court granted plaintiff's

request to accelerate payment and when defense counsel objected, stated that he "misspoke" when he said on September 19 that defendants had not agreed to an acceleration clause but had meant to say that they had not agreed to a "penalty clause."

Because we find that the June 20 letter from plaintiffs' counsel indicates that plaintiffs did not contemplate acceleration of payments and the transcript of the September 19 hearing shows that the trial judge did not clearly recollect whether the parties agreed to an acceleration clause during settlement negotiations in the judge's chambers, we find that the trial court erred in entering judgment in the amount of $2,800,000, the full amount due under that agreement. Therefore, the trial court's October 3, 2007, order accelerating payment is vacated.

■ Defendants also raise issues regarding the propriety of Judge Taylor hearing the motion to enforce in light of his participation in settlement discussion and his in-court conduct and his statements to defense counsel. First, defendants maintain that Judge Taylor should not have considered the motion to enforce the settlement agreement because he was a material witness regarding disputed evidentiary facts.

Section 2—1001(a)(3)(iii) of the Code of Civil Procedure provides as follows with respect to substitution for cause:

> "Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition. *** If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition." 735 ILCS 5/2—1001(a)(3)(iii) (West 2006).

Here, defendants' motion for substitution of judge was referred to and denied by Judge Maddux, who sent the case back to Judge Taylor. Defendants subsequently filed a motion to reconsider, which Judge Maddux denied. "A reviewing court will not reverse a determination on allegations of judicial prejudice unless the finding is contrary to the manifest weight of the evidence." *Jacobs v. Union Pacific R.R. Co.*, 291 Ill. App. 3d 239, 244-45 (1997). In their briefs, defendants do not assert that Judge Maddux's decision was against the manifest weight of the evidence but, instead, appear to argue that Judge Taylor should have *sua sponte* recused himself under Supreme Court Rule 63(C)(1) (210 Ill. 2d R. 63(C)(1)). Rule 63(C)(1) provides, in part, as follows:

> "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]

* * *

(e) the judge ***
(iv) is to the judge's knowledge likely to be a material witness in the proceeding." 210 Ill. 2d Rs. 63(C)(1)(a), (e)(iv).

Defendants assert that Judge Taylor was a material witness regarding disputed evidentiary facts, because he was the only nonparty witness to the settlement negotiations, and therefore, should not have presided over the motion to enforce. Defendants, however, cite no cases that would require a judge to recuse himself because he was present during settlement negotiations. In an analogous case, *People v. B.R. MacKay & Sons, Inc.*, 262 Ill. App. 3d 389 (1993), defendant asserted that it was denied a fair hearing on plaintiff's section 2—1401 petition (735 ILCS 5/2—1401 (West 2006)) because the trial judge refused to recuse himself after having been intimately involved in the three-day settlement discussions that occurred shortly after the case was filed. Defendant also contended that the trial judge should have recused himself to avoid any partiality or appearance of impropriety because he had a vested interest in seeing that the resolution, which he had fostered and for which he was publicly acclaimed, succeeded. The appellate court found defendant's argument meritless stating that, "[w]hile '[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned *** where *** he has personal knowledge of disputed evidentiary facts concerning the proceeding' (134 Ill. 2d R. 63(C)(1)(a)), this case is not the type of situation where a reasonable person would question a judge's impartiality." *B.R. MacKay & Sons, Inc.*, 262 Ill. App. 3d at 398. In that case, defendant did not establish a basis for its assertion that it was denied an impartial hearing as a result of the trial judge's intensive involvement with the negotiations or that a reasonable person, not knowing whether or not the judge was actually impartial, might reasonably question the judge's impartiality. Similarly, in this case, Judge Taylor's participation in the negotiations did not require recusal.

Defendants also contend that Judge Taylor should not have heard the motion to enforce judgment because his conduct in this case created an appearance of impropriety in violation of Supreme Court Rule 63(A) (210 Ill. 2d R. 63(A)).[3] Defendants assert that Judge Taylor failed to maintain order and decorum in proceedings before him, in violation of Supreme Court Rule 63(A)(2) by threatening to hold an attorney who was not yet appearing in the case in contempt, threaten-

---

[3]Rule 63(A) provides, in part:

ing to take defendant Zavacki, who was not present in court, into custody, and referring to himself as "Judge Dredd" and "the executioner." Defendants also argue that Judge Taylor violated Rule 63(A)(3) by being discourteous to substitute counsel who was not prepared to proceed with the hearing on the motion to enforce judgment on the first day he appeared in the case, even though no hearing was scheduled for that day. Lastly, defendants assert that Judge Taylor violated Rule 63(A)(7) by failing to conduct proceedings with dignity and decorum and Rule 63(A)(8) as evidenced by his statement that he was prepared to rule before briefing, a hearing or argument on the motion to enforce.

---

"(2) A judge should maintain order and decorum in proceedings before the judge.

(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

(4) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication, and

(ii) the judge makes provisioin promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond.

\* \* \*

(7) Proceedings in court should be conducted with fitting dignity, decorum, and without distraction. \*\*\*

(8) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so." 210 Ill. 2d Rs. 63(A)(2), (A)(3), (A)(4), (A)(7), (A)(8).

For comments by a trial judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he was harmed by the comments. *People v. Pecka*, 183 Ill. App. 3d 60, 71 (1989). "In the absence of a showing of animosity, hostility, ill-will or distrust towards the defendant, proof falls short of establishing the actual prejudice which would interfere with a fair trial." *People v. Neumann*, 148 Ill. App. 3d 362, 370 (1986), citing *People v. Vance*, 76 Ill. 2d 171 (1979). Moreover, during a nonjury trial comments by a trial judge are allowed greater latitude than would be acceptable were a jury present. *Joray Mason Contractors v. Four J's Construction Corp.*, 61 Ill. App. 3d 410, 412 (1978). In the case before this court, defendants fail to prove actual prejudice that would require the judge to recuse himself from hearing the motion to enforce. While Judge Taylor's remarks may have been intemperate, when taken in context, they appear to be attempts by the court to move the proceedings along, indicating no prejudice toward defendants.

■ Defendants also assert that Judge Taylor's order enjoining defendants from transferring assets until the completion of the hearing violated Rule 63(A)(4). Defendants describe this order as *ex parte*; however, there is no evidence of any improper communication between plaintiffs and the court and nothing in the record indicates that the plaintiffs filed a motion requesting that the court issue this order. Therefore, it would be more appropriately categorized as a *sua sponte* order. Since there is nothing to indicate that Judge Taylor engaged in improper *ex parte* communications with plaintiffs when deciding to issue the injunction, we find that he did not violate Rule 63(A)(4).

■ Lastly, defendants contend that the trial court's orders should be vacated because Judge Taylor engaged in threats of jail time, shortened deadlines and accelerated payments in order to coerce the parties into settling, which is impermissible under Illinois law. For support, defendants cite *Gevas*, 566 F.3d 717, wherein the Seventh Circuit Court of Appeals stated that "[a] judge may not coerce a party into settling" and that "[c]oercion occurs when a judge threatens to penalize a party that refuses to settle." *Gevas*, 566 F.3d at 719. However, the allegations by defendants involve actions and statements made by the trial judge after the parties had reached an oral settlement agreement on June 7. Defendants present no evidence that the trial judge coerced the parties into entering into that settlement agreement; therefore, there is no basis to vacate the court's September 19 order. With regard to the October 3 order accelerating payment, because we have already found that the order should be vacated on the grounds that the trial court erred in finding that the parties had agreed to an acceleration clause, we need not address the issue of coercion.

## CONCLUSION

For the foregoing reasons, we affirm the trial court order of September 19, 2007, enforcing the oral settlement agreement reached on June 7, 2007. However, we also find that the trial court erred in finding that the parties agreed to an acceleration clause as part of the settlement agreement. Therefore, we vacate that part of the trial court's October 3, 2007, order requiring defendants to immediately make all payments due under the agreement. As of July 1, 2009, defendants owed plaintiffs $2 million plus applicable interest. This cause is remanded to the circuit court with instructions to enforce the settlement agreement as set forth herein.

Remanded with instructions.

MURPHY, P.J., and COLEMAN, J., concur.