**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210233-U

Order filed June 8, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| FLOYD J. RASHID, D.D.S., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| PARHAM PARASTARAN and FIVE STAR | ) | Appeal No. 3-21-0233 |
| ACQUISITIONS, LLC, an Illinois Limited | ) | Circuit Nos. 18-LM-316 |
| Liability Company, | ) | 18-LM-39 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Five Star Acquisitions, LLC, | ) | The Honorable |
| | ) | Michael D. Risinger, |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Albrecht and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The circuit court did not err when it granted the defendants' motion to enforce a settlement agreement.

¶ 2    The plaintiff, Floyd Rashid, D.D.S., sued the defendants, Parham Parastaran and Five Star Acquisitions, LLC (Five Star), regarding certain commercial property that Rashid sold to

Five Star and space he subleased at that property. The defendants filed a motion to enforce a settlement agreement, which the circuit court granted after a hearing. On appeal, Rashid argues that the court erred when it granted the defendants' motion. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On February 21, 2018, Rashid filed a three-count complaint against the defendants in Peoria County circuit court case number 18-LM-39. The complaint alleged that Rashid sold real property located at 4530 North Brandywine Drive in Peoria to Five Star in June 2003. Parastaran was a member/manager of Five Star and was actively involved in the negotiations. As a part of the transaction, Rashid provided partial seller financing of $600,000. As security, Five Star signed a promissory note, which was personally guaranteed by Parastaran. Additionally, Five Star entered into a mortgage with Rashid for the balance of the payment for the property. This case involves only the promissory note.

¶ 5        Approximately one year after the transaction, Five Star defaulted on the promissory note, which Parastaran claimed was due to a loss of tenants at the property.

¶ 6        In February 2013, Rashid agreed "to forgive a significant portion of the remaining balance due on the Promissory Note" in exchange for Five Star allowing him to use and occupy space at the property. To effectuate that arrangement, Five Star leased space at the property to Parastaran, who then subleased the space to Rashid, effective March 1, 2013.

¶ 7        Counts I and II of the complaint were pled in the alternative and alleged that Parastaran (count I) and Five Star (count II) breached the sublease by entering onto the subleased premises without notice or consent, damaging Rashid's personal property while moving it without consent, and failing to perform certain repairs. On those counts, Rashid sought a monetary

judgment "in the amount of the damages sustained by [him] as shown by the evidence in this case ***."

¶ 8   Count III alleged that Five Star and Parastaran falsely claimed that they were unable to pay on the promissory note and did so with the intent of inducing Rashid to waive strict compliance with the terms of the note. He sought recission of the sublease "and the corresponding agreement to forgive amounts due under the Promissory Note ***."

¶ 9   The defendants filed a separate, forcible-entry-and-detainer action, circuit court case number 3-LM-316, against Rashid in May 2018, alleging that Rashid had failed to vacate the subleased space at the end of the five-year sublease term. The defendants sought judgment against Rashid for possession of the subleased premises and the costs to bring the action.

¶ 10   Thereafter, the case languished until August 3, 2020, when Rashid wrote a letter to the circuit court, informing it that his attorney had talked him into settling the case for $25,000. However, he had reconsidered and told his attorney that he would not settle for that amount. His attorney told him that everything had already been agreed upon electronically and by phone. Rashid indicated that he believed any settlement would not have been finalized until he physically signed papers, so he requested that the court "get this agreement cancelled."

¶ 11   On December 31, 2020, the defendants filed a motion to enforce an oral settlement agreement purportedly entered into with Rashid. The motion alleged that the parties had been engaging in settlement discussions throughout the course of the case and attached numerous e-mails sent between the attorneys regarding those discussions. On April 27, 2020, defense counsel offered to settle all claims for $17,500. Defense counsel clarified shortly thereafter that "the settlement offer was to resolve all claims, including the counterclaim against Dr. Rashid." Counsel for Rashid told defense counsel he had to discuss the offer with his client.

3

¶ 12    The motion to enforce also alleged that on July 1, counsel for Rashid sent an e-mail to defense counsel offering to settle all claims for $30,000. Defense counsel responded on July 21 with a counteroffer of $20,000. On July 29, counsel for Rashid lowered the settlement demand to $25,000.

¶ 13    The motion further alleged that on July 30, the parties appeared in court for a case management conference and updated the court on the settlement discussions. After the hearing, counsel for Rashid e-mailed defense counsel and stated that "Dr. Rashid is having misgivings about settling. I told him we need to give you until close of business today, so please respond today."  Later that day, defense counsel left a voice mail message with counsel for Rashid in which the defendants accepted the $25,000 settlement offer. Counsel for Rashid confirmed that he received the message. The attorneys continued to communicate that day about the details, which included the transmission of a W-9 form to the defendants that was signed by Rashid. The signed W-9 form was necessary for the defendants to obtain Rashid's taxpayer identification number so their payment to him could be properly recorded for tax purposes.

¶ 14    Rashid refused to sign a release, and his attorney was allowed to withdraw in October 2020. Following the withdrawal, Rashid proceeded *pro se* and filed a response to the defendants' motion in February 2021 in which he claimed that no oral settlement agreement had been reached. He stated that his attorney tried to talk him into settling for $25,000, but that Rashid said only that he would consider it.

¶ 15    On April 30, 2021, the defendants served a "Re-notice of Motion" on Rashid via United States mail that advised him their motion would be heard on May 13 at 2 p.m. Rashid appeared at that hearing and, during arguments, stated that he did not know why he signed the W-9 form, as he never told his attorney that he would agree to settle for $25,000. At the close of the hearing,

4

the court found that the existence of an enforceable oral agreement to settle the case had been proven. Thus, the court granted the defendants' motion and dismissed circuit court case numbers 18-LM-39 and 18-LM-316 in their entirety with prejudice but retained jurisdiction to enforce the settlement.

¶ 16       Rashid appealed.

¶ 17                                  II.  ANALYSIS

¶ 18       On appeal, Rashid argues that the circuit court erred when it granted the defendants' motion to enforce the settlement agreement. He raises three challenges to the court's ruling. His first and second arguments are sufficiently similar, so we will address them together.

¶ 19       He first alleges that his attorney did not have the authority to settle the case without his signature.

¶ 20       His first argument must be clarified before we address it. He is *not* arguing that his attorney lacked the authority to settle the case at all. Indeed, the pleadings and exhibits, including the e-mails between the attorneys, are sufficient to establish that Rashid had given his attorney the authority to bind him to a settlement agreement. It is clear that Rashid's attorney kept him informed and involved during the long period of settlement negotiations. Rashid's letter to the court even indicated that his attorney had convinced him to settle the case for $25,000 and specifically asked the court to "get this *agreement* cancelled". (Emphasis added.) Rather, Rashid appears to argue that he believed it was a condition precedent to entering into a settlement agreement that he had to physically sign something as the final step. This argument is essentially the same as his second argument that the settlement agreement had to be a discrete written and signed document for it to be enforceable. What Rashid appears to be asserting in these two

5

arguments is that the absence of his signature shows there was no meeting of the minds and therefore no valid, enforceable agreement regarding the terms.

¶ 21    Settlement agreements are governed by the law of contracts. *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 313 (2009). "Oral agreements are binding so long as there is an offer, an acceptance, and a meeting of the minds as to the terms of the agreement." *Id.* We review a circuit court's ruling on a motion to enforce a settlement agreement under the manifest-weight-of-the-evidence standard. *Id.* at 312. "A finding regarding the validity of a settlement agreement is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or where a decision is palpably erroneous and wholly unwarranted." *Id.*

¶ 22    "A meeting of the minds exists whenever the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more parties did not subjectively intend to be bound." *County Line Nurseries & Landscaping, Inc., ex rel. Bankruptcy Trustee v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 33. Rashid does not deny that he authorized his attorney to act as his agent and pursue his interests in the dealings with the defendants. Pursuant to that agency, Rashid's attorney, the defendants, and defense counsel relied on his words and actions and not on thoughts and beliefs to which they were not privy. In this case, it is undisputed that Rashid signed a corroborative W-9 form after the defendants agreed to settle all claims for $25,000. That action served as objective proof of Rashid's acquiescence to the settlement terms. Any belief he possessed that he had to sign something before the agreement would be binding was merely subjective and therefore would not preclude a finding of a meeting of the minds. See *id.* ¶ 34; see also *Fishburn v. Barker*, 165 Ill. App. 3d 229, 230 (1988) (holding that "when properly proved, *** an [oral] agreement should not be unenforceable merely because there is no judgment incorporating the settlement, no signed release, and no expression

6

of the plaintiff's willingness to sign a release"). Accordingly, we hold that the circuit court's finding that a valid and enforceable oral settlement agreement existed is not against the manifest weight of the evidence.

¶ 23    Rashid's third argument is that the circuit court erred by failing to continue the case for an evidentiary hearing.

¶ 24    Here, the record reflects that Rashid received notice that the circuit court would hear the defendants' motion on May 13, 2021, and that he did not request an evidentiary hearing. His failure to do so results in the forfeiture of his third argument on appeal. See *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 22 (holding that "[f]ailure to raise an issue in the trial court generally results in forfeiture of that issue on appeal"). The fact that he proceeded *pro se* does not excuse him from understanding the litigation process. See, *e.g.*, *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16 (holding that "[w]here a party has chosen to represent himself, he is held to the same standard as a licensed attorney and must comply with the same rules"). Accordingly, we decline to address the merits of Rashid's third argument.

¶ 25                                III.  CONCLUSION

¶ 26    For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 27    Affirmed.