NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241176-U

NO. 4-24-1176

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KARLA WESTJOHN and PATRICIA GRIFFITH, | ) | Appeal from the |
| Petitioners-Appellants, | ) | Circuit Court of |
| v. | ) | Ford County |
| KAMALEN JOHNSON ANDERSON, Individually and | ) | No. 15CH30 |
| in Her Official Capacity as Ford County Circuit Clerk, | ) | |
| Respondent-Appellee. | ) | Honorable |
| | ) | Jennifer Hartmann |
| | ) | Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding the circuit court did not err in finding the parties entered into a valid and enforceable settlement agreement.

¶ 2   Petitioners, Karla Westjohn and Patricia Griffith, initiated contempt proceedings against respondent, Kamalen Johnson Anderson, individually and in her official capacity as the Ford County circuit clerk. After settlement discussions, respondent filed a petition to enforce a purported settlement agreement. The circuit court, based upon its review of the written arguments of the parties and the court file, granted respondent's petition, finding (1) the parties entered into a valid and enforceable settlement agreement and (2) respondent's proposed release and stipulation of dismissal accurately set forth the terms of the parties' agreement. Petitioners appeal, arguing the court erred in finding the parties entered into a valid and enforceable settlement agreement. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4            On August 3, 2023, petitioners filed a petition initiating contempt proceedings against respondent. Petitioner Westjohn is petitioners' counsel, and she is blind. The contempt allegations stemmed from a civil action seeking to foreclose a mechanic's lien. Petitioners alleged respondent violated the United States and Illinois Constitutions, several civil rights statutes, and a 2019 court order when she failed to accommodate the disability of petitioners' counsel by permitting the filing and receipt of pleadings through e-mail. Amongst other things, petitioners sought (1) attorney fees for the work petitioners' counsel had to do to get documents filed and received in the civil action and for the work she had to do in the contempt proceedings and (2) compensatory damages in the amount of $2,500 per petitioner.

¶ 5            On October 10, 2023, respondent, through counsel who previously entered an appearance on respondent's behalf, filed a response to petitioners' contempt petition.

¶ 6            On October 29, 2023, petitioners' counsel e-mailed a settlement letter to respondent's counsel. The settlement letter states, in part, the following:

> "We will dismiss this matter in exchange for payment of seven thousand five hundred dollars ($7,500), fifty (50) hours of work priced at one hundred and fifty ($150) per hour. *** In addition[,] your client will pay two thousand five hundred dollars ($2,500) to me and two thousand five hundred dollars ($2,500) to my client as compensation for the discrimination against us. The total we will accept is twelve thousand five hundred dollars ($12,500).
>
> * * *
>
> You have until midnight, October 31, 2023[,] to accept this offer. You may accept via E-Mail or by calling my office. If I do not hear from you by that time,

the offer will be deemed rejected."

The settlement letter set forth potential actions petitioners could take, including related federal litigation, if respondent did not meet the demands set forth in the letter.

¶ 7        On October 30, 2023, respondent's counsel e-mailed petitioners' counsel, seeking clarification about the expiration of the settlement offer. That same day, petitioners' counsel responded to the e-mail, stating, in part, the following: "Given that you are considering the settlement, I will amend my offer to permit forty-eight (48) hours for acceptance from the time it was originally made—that is, by 12:00 a.m. on November 1, 2023."

¶ 8        On October 31, 2023, respondent's counsel e-mailed petitioners' counsel. In part, respondent's counsel stated the following:

> "Please allow this e-mail to confirm that we've reached a settlement agreement.
>
> Per your undated letter entitled 'settlementletter10292023' received by e-mail on Sunday, October 29, 2023[,] at 11:14 P.M. and again on Monday, October 30, 2023[,] at 9:08 A.M., in exchange for an aggregate payment of $12,500.00, to you and Patricia Griffith, you both will agree to: execute a standard release expressing the terms of our settlement agreement, file a Stipulation to Withdraw and Dismissal of the pending Petition for Indirect Civil Contempt with prejudice as well as forego [*sic*] filing any amendment to said petition. As a part of our agreement, you both also agree to forego [*sic*] pursuing any future litigation premised upon the matters addressed in said pending petition or the threatened amendment of the pending petition premised upon alleged issues with your efforts to file a motion on Friday, October 20, 2023. (see attached release for specific

terms)

Attached please find a standard written release for you and Patricia Griffith to execute memorializing the terms of our settlement agreement. Assuming it meets with your and Patricia Griffith's approval, I would appreciate it if you would have said release fully executed and return the original signed copy to me. I've also attached a proposed written Stipulation for Dismissal and a corresponding Order of Dismissal for your and Patricia Griffith's review and approval. Assuming both meet with your approval, I relate that I will not file them before I have sent you the settlement check.

Please confirm our agreement and let me know if you authorize me to contact the Court for purposes of informing it that we've reached a settlement and the status hearing scheduled for Monday, November 6, 2023[,] at 3:30 can be taken off the docket.

If you have any questions or concerns regarding the foregoing, please let me know."

¶ 9 On November 3, 2023, petitioners' counsel e-mailed Alicia Weber, an employee of the Ford County circuit clerk's office, and copied respondent's counsel to the e-mail. The e-mail states, in part, the following:

"[Respondent's counsel] and I have reached a settlement in the contempt proceeding filed in [Ford County case No.] 2015-CH-30, set for status on Monday, [N]ovember 6, 2023. I have forwarded an Agreement and General Release of Claims and a Joint Stipulation to him. Please remove the matter from the calendar. Thank you for your consideration in this matter."

¶ 10      Also on November 3, 2023, petitioners' counsel e-mailed respondent's counsel, stating, in part, the following:

> "The date on the October 29, 2023, settlement offer appears just below my contact information; the letter was not undated. You did not attach any documents when you accepted the offer. I have prepared a Settlement Agreement and a Joint Stipulation for your client's and your review.

> They are attached. I have also notified Alicia Weber of the settlement so that the matter can be removed from Monday's calendar. Your firm's addresses were all included on that communication."

¶ 11      On November 6, 2023, the circuit court held a status hearing. The record on appeal does not contain transcripts, a bystander's report, or an agreed statement of facts from the hearing. According to a docket entry from that hearing, "Parties advise that they have made significant progress in settlement negotiations and will likely reach an agreed resolution shortly."

¶ 12      Between late 2023 and early 2024, progress towards an agreed resolution of the contempt proceedings halted. Through their respective written correspondences, the parties conveyed their disagreement as to the existence of a settlement agreement. Petitioners asserted no agreement existed, while respondent asserted an agreement existed. During this time, petitioners also moved for and received a substitution of the judge assigned to the matter.

¶ 13      On April 8, 2024, the circuit court held a status hearing, at which the parties advised the newly assigned judge of the dispute concerning the existence of a settlement agreement. Petitioners asserted respondent, in replying to their settlement offer, added a new term, namely, that petitioners sign the settlement documents and return them to respondent's counsel, who would hold off on filing the documents until a check was sent to petitioners. Petitioners characterized

respondent's reply with an additional term as a counteroffer, which they did not accept. Petitioners also asserted the language of the release had not been agreed upon. Respondent, in response, asserted the parties entered into a written settlement agreement and the only remaining dispute concerned the specific language of the release. Respondent requested the opportunity to file a motion to enforce the purported settlement agreement, which the court allowed.

¶ 14        On April 22, 2024, respondent filed her petition to enforce the purported settlement agreement. Respondent argued the parties entered into a valid and enforceable settlement agreement. Specifically, respondent asserted petitioners tendered a written offer to dismiss the contempt petition in exchange for a total payment of $12,500, which she accepted in writing, and she asked petitioners to confirm the agreement. Respondent further asserted petitioners' counsel expressly confirmed the settlement in writing in an e-mail to respondent's counsel and an employee of the circuit clerk's office. Respondent also argued her proposed written release attached to her petition fairly set forth the parties' agreement, while petitioners' proposed release, which was also attached to the petition, did not. Respondent attached a proposed stipulation of dismissal.

¶ 15        On May 14, 2024, petitioners filed a response to respondent's petition to enforce. Petitioners argued no settlement agreement existed and, even if an agreement existed, it was unenforceable as "against public policy" due to violations of the rules of professional conduct by respondent's counsel. As for their denial of the existence of an agreement, petitioners maintained respondent, in replying to their settlement offer, added a new term, which petitioners found to be "wholly unsatisfactory." Petitioners acknowledged petitioners' counsel communicated with the circuit clerk's office "about taking the case off the docket" on November 6, 2023, and further averred it was respondent's counsel who wished to keep the matter on the docket, which they

asserted was "a tacit statement that he did not believe negotiations were complete." Petitioners also asserted they drafted alternative settlement documents after petitioners' counsel could not retrieve respondent's documents, which they characterized as a counteroffer that was rejected by respondent. As for their argument that any agreement was unenforceable, petitioners asserted respondent's counsel violated the professional rules by (1) filing an appearance and a response containing false statements of law and fact and (2) making unjust and patronizing comments in a November 3, 2023, e-mail and during the November 6, 2023, status hearing.

¶ 16            On May 20, 2024, respondent filed a reply to petitioners' response to the petition to enforce. Respondent maintained the parties entered into a valid and enforceable settlement agreement. Respondent noted neither party expressed that reaching a consensus on the precise language of the written release was a condition precedent to settlement. Respondent further denied the allegations of misconduct by her counsel.

¶ 17            On August 30, 2024, the circuit court entered a written order granting respondent's petition to enforce. The court found, based upon its review of the written arguments of the parties and the court file, (1) the parties entered into a valid and enforceable settlement agreement and (2) respondent's proposed release and stipulation of dismissal accurately set forth the terms of the parties' agreement. The court ordered the parties to fully execute the settlement agreement by signing respondent's proposed release and stipulation of dismissal, exchanging the release and a settlement check, and filing the stipulation of dismissal.

¶ 18            This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20            On appeal, petitioners argue the circuit court erred in finding the parties entered into a valid and enforceable settlement agreement. Specifically, petitioners maintain no agreement

exists and, even if an agreement exists, it is unenforceable. Respondent, in response, contends the court correctly found the parties entered into a valid and enforceable settlement agreement.

¶ 21    As an initial matter, we must address the applicable standard of review. While the parties agree the issue concerning the enforceability of any agreement is subject to *de novo* review, they disagree as to the applicable standard of review concerning the issue of whether they entered into a valid settlement agreement. Petitioners contend, without citation to any authority, the issue should be reviewed for an abuse of discretion, while respondent contends, citing *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312 (2009), the issue should be reviewed under the manifest-weight-of-the-evidence standard.

¶ 22    We find the issue of whether the parties entered into a valid settlement agreement, like the issue concerning the enforceability of any such agreement, is subject to *de novo* review. The circuit court reached its finding that the parties entered into a valid settlement agreement based upon its review of the written arguments of the parties and the court file. The court did not conduct an evidentiary hearing, nor did it resolve any disputed factual issues. Under these circumstances, we find *de novo* review is appropriate. See *Lukanty v. Moglinicki*, 2022 IL App (1st) 210794, ¶ 28 ("[W]here the trial court's decision to grant or deny a settlement agreement is made on the motion pleadings and attachments, without holding an evidentiary hearing, the appellate court reviews the trial court's decision *de novo*."); *In re Marriage of Kranzler*, 2018 IL App (1st) 171169, ¶ 39 ("The interpretation of a contract and whether a valid contract exists are determinations reviewed *de novo*, to the extent the facts are undisputed.").

¶ 23    *K4 Enterprises, Inc.*, upon which respondent relies in support of her request for review under the manifest-weight-of-the-evidence standard, is distinguishable. In that case, the appellate court applied the manifest-weight-of-the-evidence standard when considering a

challenge to a circuit court's finding that the parties reached an oral settlement agreement. *K4 Enterprises, Inc.*, 394 Ill. App. 3d at 312. Critically, and distinguishable from the present case, the purported oral settlement agreement in *K4 Enterprises, Inc.*, was reached in the presence of the circuit court. *Id.* at 309-10. Accordingly, *K4 Enterprises*, *Inc.* does not change our finding *de novo* review is appropriate in this case.

¶ 24    We now turn to petitioners' challenge to the circuit court's finding that the parties entered into a valid settlement agreement. Petitioners maintain no agreement exists because (1) they rejected respondent's counteroffer for them to review and execute a release and a stipulation of dismissal prior to receiving a check from respondent, (2) respondent rejected their counteroffer for her to review and execute their settlement release, and (3) the parties had not agreed upon all essential terms.

¶ 25    "A settlement agreement is in the nature of a contract, and construction and enforcement of such agreements are governed by principles of contract law." *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). A settlement agreement generally requires an offer, an acceptance, and a meeting of the minds as to the terms. *County Line Nurseries & Landscaping, Inc. v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 33. "[A]n acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." *Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 548 (2006). "Even where the parties contemplate the execution of a written release or stipulation, this writing need not be a condition precedent to a valid settlement agreement." *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 147 (1997).

¶ 26    In this case, we find the parties, through their written correspondences, entered into a valid settlement agreement. Petitioners' counsel offered to dismiss the contempt proceedings in

exchange for $7,500 in attorney fees and $2,500 in compensatory damages for each petitioner, totaling $12,500. Respondent's counsel agreed with petitioners' terms and indicated counsel would send a check after petitioners executed and returned a release and a stipulation of dismissal. Respondent's counsel requested petitioners' counsel confirm the agreement. Even assuming, *arguendo*, respondent's counsel presented petitioners with a counteroffer, the record, contrary to petitioners' assertions on appeal, demonstrates the essential terms of the agreement were set forth in the correspondences and petitioners accepted the counteroffer by confirming the settlement agreement to respondent's counsel and a circuit court employee. Furthermore, there is nothing in the parties' correspondences indicating a consensus on the language of a release was a condition precedent to the formation of a settlement agreement. Accordingly, we reject petitioners' challenge to the circuit court's finding that the parties entered into a valid settlement agreement.

¶ 27       We turn next to petitioners' challenge to the circuit court's finding that the settlement agreement between the parties was enforceable. While petitioners maintain the agreement was unenforceable based upon the alleged misconduct of respondent's counsel, they assert, for the first time, said misconduct makes the agreement unenforceable as substantively unconscionable. They cite alleged misconduct related to the appearance and the response filed by respondent's counsel, as well as the statements made by respondent's counsel in a November 3, 2023, e-mail and during the November 6, 2023, status hearing.

¶ 28       A contract may be declared unenforceable as unconscionable. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). Unconscionability may be substantive or procedural. *Id.* "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." (Internal quotation marks omitted.) *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 28 (2006). "Procedural unconscionability consists of some impropriety

during the process of forming the contract depriving a party of a meaningful choice." (Internal quotation marks omitted.) *Id.* at 23. With respect to procedural unconscionability, factors to be considered include (1) the circumstances surrounding the transaction, including the way the contract was entered into, (2) whether each party had a reasonable opportunity to understand the terms of the contract, and (3) whether important terms were hidden in a maze of fine print. *Id.*

¶ 29　　　　In this case, we find the settlement agreement is not unenforceable as unconscionable. To begin with, petitioners do not challenge the actual terms of the agreement. Furthermore, they do not explain how the alleged misconduct of respondent's counsel deprived them of a meaningful choice. The record shows the alleged misconduct with respect to the appearance and response occurred well before the settlement correspondences. Additionally, with respect to the alleged misconduct in November 2023, petitioners do not present an adequate record to support their claims. Petitioners have not shown the settlement agreement is unconscionable. Accordingly, we reject petitioners' challenge to the circuit court's finding that the parties entered into an enforceable settlement agreement.

¶ 30　　　　In sum, we conclude the circuit court did not err in finding the parties entered into a valid and enforceable settlement agreement.

¶ 31　　　　　　　　　　　　III. CONCLUSION

¶ 32　　　　For the reasons stated, we affirm the circuit court's judgment.

¶ 33　　　　Affirmed.