**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240475-U

Order filed September 26, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| GEORGENE M. KARLOW, Independent Executor of the Estate of Rita Jeanne Hoffman, deceased, beneficiary of the Rita Jeanne Hoffman Declaration of Trust dated 08/16/1990 and beneficiary of the Norman Hoffman Declaration of Trust dated 08/16/1990, and JENNIFER M. BURR, beneficiary of the Rita Jeanne Hoffman Declaration of Trust dated 08/16/1990 and beneficiary of the Norman Hoffman Declaration of Trust dated 08/16/1990, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellees, | )<br>) | |
| v. | )<br>) | Appeal Nos. 3-24-0475 |
| | )<br>) | 3-24-0499 |
| JAMES H. HUPKE, as Successor Co-Trustee of the Rita Jeanne Hoffman Declaration of Trust dated 08/16/1990 and of the Norman Hoffman Declaration of Trust dated 08/16/1990, LAUREN M. COLLINS, individually, as Power of Attorney for Rita Jeanne Hoffman, as Power of Attorney for Norman Hoffman, and as Successor Co-Trustee of the Rita Jeanne Hoffman Declaration of Trust dated 08/16/1990 and of the Norman Hoffman Declaration of Trust dated 08/16/1990, COLLEEN M. COLLINS, an individual, KAYLEIGH REYES, an individual, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3-24-0577<br>Circuit No. 21-CH-122 |

|  |  |  |
|---|---|---|
| Defendants, | ) | Honorable |
|  | ) | John C. Anderson, |
| (Lauren M. Collins and James H. Hupke, | ) | Bennett J. Braun, |
| Defendants-Appellants.) | ) | Judges, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.
_____

**ORDER**

¶ 1        *Held*: The trial court granted plaintiffs' motion to enforce settlement agreement. Reversed and remanded.

¶ 2        Plaintiffs, Georgene M. Karlow and Jennifer M. Burr, moved for partial summary judgment on their claims against defendants, James H. Hupke, Lauren M. Collins, Colleen M. Collins, and Kayleigh Reyes, alleging various forms of mismanagement and breach of fiduciary duties with respect to the Rita Jeanne Hoffman Declaration of Trust dated 8/16/90 and the Norman Hoffman Declaration of Trust dated 8/16/1990. Kayleigh, a stepdaughter of Lauren's, was subsequently dismissed from the suit. The remaining parties entered into settlement negotiations. Counsel jointly representing James and Lauren withdrew, and the parties disputed whether a settlement agreement had been reached prior to counsels' withdrawal. Plaintiffs moved to enforce the alleged settlement agreement. The trial court, Judge John C. Anderson, granted the motion and denied subsequent motions to reconsider. Lauren and James filed notices of appeal in appeal Nos. 3-24-0475 and 3-24-0499. While those appeals were pending, plaintiffs pursued, *inter alia*, a motion to turnover trust assets and the $325,000 settlement amount. The trial court, Judge Bennett J. Braun, granted the motion in part, but continued the matter to determine whether James and Lauren were jointly and severally liable for the $325,000 payment. Lauren moved to

2

reconsider Judge Braun's handling of the motion for turnover, which the court denied. Lauren appealed that denial in appeal No. 3-24-0577. This court consolidated all three appeals. James filed a motion for this court to determine jurisdiction, arguing that the matter of joint and several liability remained unresolved. We denied the motion without prejudice and asked the parties to address jurisdiction in their appellate briefs. For the reasons that follow, we determine that we have jurisdiction, and we reverse and remand.

¶ 3                                  I. BACKGROUND

¶ 4        In 1990, Norman and Rita Hoffman, born in the 1920's, executed the aforementioned trusts. Norman and Rita were the trustees of their respective trusts. When Norman passed away in 2017, James, a trusted family friend born in the 1950's, and Lauren, a granddaughter born in the 1970's, became successor co-trustees of Norman's trust. After Norman's death, Rita was the primary beneficiary of Norman's trust. Rita passed away in February 2020, and James and Lauren were charged with winding down Norman's trust on behalf of the contingent beneficiaries. Upon Rita's death, James and Lauren became successor co-trustees of Rita's trust as well. Norman and Rita were survived by four children, including plaintiff Georgene and defendant Colleen, as well as numerous grandchildren, including plaintiff Jennifer and defendant Lauren, all of whom were beneficiaries of the trusts.

¶ 5        In 2016, Rita appointed Lauren to serve as power of attorney for her finances. Also around that time, Rita named Colleen as a joint account holder to one of her personal bank accounts.

¶ 6        On March 26, 2021, plaintiffs filed a Petition for Inventory and Accounting of Trust, and Accounting from Power of Attorney. They alleged, *inter alia*, breach of fiduciary duty and fraud, against Lauren and James as co-trustees of Norman's and Rita's trusts; Lauren, as agent under power of attorney for Rita; and Colleen as an individual.

3

¶ 7        On April 28, 2023, following substantial discovery, plaintiffs moved for partial summary judgment against Lauren, James, and Colleen in their respective capacities. On May 5, 2023, plaintiffs amended their petition for inventory, purporting to conform to the proofs relative to the motions for partial summary judgment. The basic allegations against the parties were as follows. In September 2020, Lauren, as co-trustee of Norman's trust, prematurely distributed $177,000 from the trust to herself and $133,000 to Colleen, as beneficiaries of the trust, representing their respective *pro rata* shares. Also in September 2020, Lauren, as co-trustee of Rita's trust, distributed $48,000 from the trust to herself, $87,000 to Colleen, and $9,000 to Kayleigh, as beneficiaries of the trust, again representing their respective *pro rata* shares. No other beneficiaries received distributions and, as the trust expenses had yet to be paid, it remained uncertain whether other beneficiaries who were entitled to equal shares would receive the same monetary distributions as Lauren, Colleen, and Kayleigh. Lauren testified in deposition that she had invested her premature disbursement and that she had access to those funds. Lauren, as power of attorney, allegedly misappropriated as much as $170,000 of Rita's personal and trust funds. Lauren claimed that the funds represented gifts that her grandparents had instructed her to take over the years that she had helped to care for them. She did not receive any other payment. James, as co-trustee, allegedly stood silent while Lauren made the premature distributions (though Lauren's deposition testimony indicates that James knew of the premature distributions and incorrectly believed them to be permissible). James never received payment or any funds from the trust. Colleen allegedly aided and abetted Lauren. The other allegations against Colleen largely concerned the usage of funds in the account jointly held by Colleen and Rita and are not central to the instant appeal.

¶ 8                                A. June and July 2023 Settlement Negotiations

¶ 9 In June and July of 2023, the parties engaged in settlement negotiations via e-mail. On June 14, 2023, attorney Kyle Fahey (representing plaintiffs) sent the following e-mail to attorney Samantha Weissbluth (jointly representing Lauren and James as co-trustees of Norman's and Rita's trusts), attorney Anna Nugent (representing Lauren individually as power of attorney for Rita), and Scott Hoster (representing Colleen):

"I write in follow up to our discussions pertaining to settlement. As Samantha [Weissbluth] recently relayed to me, current Trust assets are as follows: Norman Trust ($490,966.42); Rita Trust ($251,738.25).

My clients [Georgene and Jennifer] are willing to settle this matter on the following terms:

1. *Lauren Collins and James Hupke* shall pay the amount of $325,000.00 as follows: (A) $175,000.00 shall be paid to the Rita Hoffman Trust. (B) $150,000.00 shall be paid to my clients as reimbursements for attorney's fees.

2. Lauren Collins and James Hupke personally bear the costs of all Trust attorneys fees going forward (including fees which have been incurred but remain unpaid).

3. Lauren Collins shall resign as Co-Trustee and all remaining Trust administration shall be completed by James Hupke as sole trustee.

4. Lauren Collins shall waive her right to any further distributions from the Norman Trust, Rita Trust, their estates or otherwise.

5. Lauren Collins and James Hupke shall waive any claims for reimbursement they have or may have.

6. Colleen Collins shall waive her right to receive any further distributions from Norman's Trust, Rita's Trust, or otherwise.

5

7. Colleen Collins shall waive any claims against either Trust/Estate she has or may have.

8. Colleen Collins returns the portion of her distributive share of the Norman Trust necessary to ensure all beneficiaries receive their appropriate *pro rata* share of Trust distributions to the exclusion of Lauren Collins and Colleen Collins.

    a. Based upon the present value of Norman's Trust identified above, this presently amounts to: $16,235.13. Returning this amount would ensure that each 15% beneficiary of Norman's Trust received an equal share.

    b. Pursuant to the Receipt/Release/Refunding Agreement signed by Colleen, Mr. Hupke, may need to make this demand.

9. All future distributions are made to the exclusion of Lauren/Colleen at *pro rata* shares.

10. All Claims dismissed with prejudice.

This settlement is contingent upon the Trusts having an equal or greater value than represented above, all taxes having been paid, and [Weissbluth's] representation that the only known future liabilities of the Trusts are legal fees and costs of tax preparation services for the 2022/2023 tax year." (Emphasis in paragraph 1 added.)

¶ 10    On July 7, 2023, at 2:53 p.m., Weissbluth and Nugent responded on behalf of Lauren and James as co-trustees and Lauren individually:

"On behalf of James and Lauren as trustees and Lauren, individually, Anna and I agree to your terms as outlined below with two minor requests:

1. James also wants to resign as trustee. As you and I discussed, I think the settlement agreement could cover one of your clients stepping in as trustee (using virtual rep., etc.).

2. Because Lauren will be essentially returning her inheritance and foregoing future inheritance, we need to ensure that she doesn't pay taxes on an inheritance that she doesn't receive. This should be manageable with whichever accountant the new trustee selects, but we would like it covered in the agreement.

Please note that our agreement to your terms is *contingent upon seeing a draft settlement agreement,* including releases. Along these lines, I assume your office will take the first stab at drafting an agreement. Please confirm.

Also, this e-mail does not cover any of the demands made of Colleen Collins in your e-mail below. Our hope is that, if Colleen does not want to settle, we can still move forward with a settlement involving Lauren and James."  (Emphasis added.)

¶ 11    On July 7, 2023, at 6:19 p.m., Hoster responded on behalf of Colleen:

"In some prior negotiations, if I recall correctly, there may have been a proposal where Colleen Collins walked away with nothing more and paid nothing back. She is still willing to settle on those terms. She gives back nothing. She gets nothing more."

¶ 12    On July 10, 2023, Fahey replied on behalf of plaintiffs:

"I believe we have a settlement *agreement in principle*, accepting [Weissbluth's] modifications below and accepting [Hoster's] offer below as to Colleen.  It does still remain contingent upon the values of the two trusts previously provided.

[Weissbluth] please confirm and advise as to any recent expenses or claims for outstanding liabilities.

7

I also spoke with [Weissbluth] a few minutes ago by phone and requested clarification as to what Administration remains outstanding, particularly with respect to any outstanding tax returns that need to be filed. She is looking into that and getting back to me, but *we can handle the first draft of a global agreement*. Ideally, we will get a draft out quickly to wrap this process up for all involved." (Emphases added.)

¶ 13                                   B. August 9, 2023, Agreed Order

¶ 14    On August 9, 2023, before Lauren or James had responded to the motions for partial summary judgment against them, the parties entered an agreed order. It provided:

"THIS MATTER COMING TO BE HEARD on presentation of an Agreed Order, the Court being advised that the Parties have *reached a settlement agreement* resolving all pending matter before the Court, *subject to execution of a written settlement agreement*, and the Court otherwise being fully advised in the premises,

IT IS HEREBY ORDERED:

1. All pending Motions are entered and continued.

2. All briefing schedules are suspended.

3. The hearing set for August 21, 2023 is stricken.

4. This matter is set for settlement status on September 12, 2023 at 9:00 a.m."
(Emphases added).

¶ 15        C. Counsels' Motions to Withdraw and Plaintiffs' Motion to Enforce

¶ 16    On August 30, 2023, Weissbluth moved to withdraw from representing Lauren and James as co-trustees. She provided:

"1. Irreconcilable differences have arisen such that Counsel now has a conflict of interest and cannot continue representing James and Lauren.

8

"2. Pursuant to this Court's last order, this matter is set for status on settlement on September 12, 2023 at 9:00 a.m."

¶ 17    On August 31, 2023, Nugent moved to withdraw from representing Lauren individually. She noted that there had been a breakdown of the attorney-client relationship between herself and Lauren.

¶ 18    On September 7, 2023, plaintiffs filed a Motion to Enforce Settlement Agreement, which is the subject of this appeal. In it, they alleged that the parties had reached an agreement, as set forth in the e-mails dated June 14, 2023; July 7, 2023; and July 10, 2023. They recounted that, on August 9, 2023, the parties entered an agreed order "advising the Court that the Parties reached the Agreement in order to strike the scheduled hearing on [Plaintiffs'] Motions for Summary Judgment and allow time to effectuate the Agreement." They alleged that, on August 16, 2023, and August 24, 2023, their counsel reached out to Weissbluth and Nugent for "status on completing the agreement." However, on August 30, 2023, and August 31, 2023, Weissbluth and Nugent moved to withdraw. Plaintiffs concluded:

"26. [Lauren's] failure to cooperate with her counsel and fulfill her obligations under the terms of the Agreement she reached has now forced the [Plaintiffs] to pursue the instant Motion.

27. Therefore, [plaintiffs] request this Honorable Court enforce the Parties' Agreement as follows:

a. Removing Lauren Collins and James Hupke as Successor Trustees of the Trusts, or otherwise directing them to resign as Successor Trustees within seven (7) days;

9

b. Directing that Lauren Collins and Colleen Collins shall receive no further distributions from the Trusts;

c. Appointing Georgene Karlow as Successor Trustee of the Trusts;

d. Compelling Lauren Collins and James Hupke to turnover all of the Trusts' assets to Georgene Karlow, as Successor Trustee of the Trusts, in an amount not less than $742,704.67 and to account for all of the Trusts' receipts and disbursements from May 4, 2023[,] through the present; and

e. Ordering *Lauren Collins and James Hupke* to make payment in the amount of $325,000.00 to the Peck Ritchey, LLC Client Funds Account within seven (7) days[.]"  (Emphasis added.)

¶ 19        On November 13, 2023, James, through new counsel Jennifer Friedland, responded to the motion to enforce settlement.  He stated that, "[a]ccording to communications [James] had with his former counsel in June of 2023, [he] believed the parties *** settled this dispute."  Further, he agreed that material terms set forth in the Motion to Enforce Settlement Agreement are accurate with one exception: "[James] did not agree to pay the [Plaintiffs] $325,000 or any portion thereof. It is his understanding that [Defendant] Lauren Collins agreed to pay the [Plaintiffs] $325,000." He requested that the trial court "deny the [Plaintiffs'] Motion to Enforce Settlement to [the extent that it] obligates him personally to pay $325,000 to the [Plaintiffs]."

¶ 20        Also on November 13, 2023, Lauren, through new counsel Anne Hasa, responded to the motion to enforce settlement.  She stated that, on July 7, 2023, Weissbluth had agreed to a settlement offer on her and James's behalf but that the agreement was contingent on seeing and approving a draft of the settlement and releases.  It was unclear from the record when a draft of the settlement was circulated but it can be inferred that one was circulated, because Lauren

10

provided feedback to Weissbluth and Nugent. As part of her response, Lauren attached an August 22, 2023, e-mail that she had sent to Weissbluth and Nugent, which provided in part:

"We are so far from what I initially agreed to. ***. If I am resigning as trustee, beneficiary, I am not paying the legal expenses (along with James)—I am not waiving my right to view the accountings or the legal invoices if I am supposed to be paying the invoices. As I have strongly expressed before, this is a blank check on top of a settlement amount of $325,000—no.

[I] [d]o not agree with the $325,000 on top of all the other items I have to pay: I have to bear any costs of my legal fees (F) as Colleen will. ***. There is an explicit waiver in there about James, Colleen, Lauren. Where is the waiver about everyone releasing me? It actually seems like the agreement has hidden items that set me up for further litigation (Item 10).

11.A I do not agree.

11.B I will not have any further duties once I resign.

General Provisions: J. Do not agree.

In summary, this full settlement agreement makes my $325,000 offer more. With the legal fees and whatever else Georgene may come up with at any given time, it is impossible to put a dollar amount towards the actual settlement. Therefore, I disagree and cannot sign."

Lauren concluded: "The written settlement was provided to [Lauren], and she never accepted the terms. With no accepted offer, there can be no enforceable settlement agreement."

On November 22, 2023, Lauren responded to *James's response* to plaintiffs' motion to enforce. Lauren asserted that there had never been an agreement as to who was to pay the

11

$325,000. Lauren argued that, in fact, she had "expressly rejected any arrangement that involved her paying the entire $325,000 to [plaintiffs]." As such, in Lauren's view, material terms remained in dispute.

¶ 21    On November 27, 2023, plaintiffs filed a reply in support of their motion to enforce. In it, they argued that the "[p]arties memorialized the essential terms of their agreement in writing on July 10, 2023, via e-mail, and thereafter took steps in furtherance of completing their agreement." Those steps included entering the August 9, 2023, agreed order and circulating a formal draft of the settlement agreement (which plaintiffs did not attach to their pleadings). In plaintiffs' view, Lauren's August 22, 2023, e-mail confirmed that she agreed to the material terms set forth in the June and July 2023 e-mails.

¶ 22                                    D. Other 2023 Motions

¶ 23    Also in 2023, the parties filed a series of other motions. On November 16, 2023, plaintiffs caused a subpoena to issue to Lauren and James's attorneys. The subpoena rider requested all documents and correspondence relating to the alleged settlement agreement. Lauren moved to quash, alleging attorney-client privilege. Plaintiffs responded that Lauren had waived the privilege by introducing the August 22, 2023, e-mail.

¶ 24    On September 7, 2023, Lauren filed a *pro se* motion purporting to address Weissbluth and Nugent's motions to withdraw. She complained that her attorneys had failed to raise an unclean-hands argument. As more fully explained in subsequent *pro se* motions, Lauren seemed to argue that plaintiffs also benefited from changes to the estate and trust documents during the time that they alleged Norman and Rita were vulnerable to undue influence. Lauren challenged the validity of the most recent iterations of the trusts. Plaintiffs responded that, to the extent Lauren's *pro se* motions addressed Weissbluth and Nugent's motions to withdraw, they were not directed at

12

plaintiffs. Plaintiffs further responded that, to the extent that Lauren's *pro se* motions alleged unclean hands, the time to contest the estate and trust documents had lapsed.

¶ 25 On November 30, 2023, plaintiffs filed a petition to remove Lauren as co-trustee. They alleged that Lauren had taken a position contrary to the interests of the trusts in that her *pro se* motions challenged the validity of the trusts. Plaintiffs also continued to allege Lauren had breached her fiduciary duties to the trust.

¶ 26 E. The January 2024 Ruling on Plaintiffs' Motion to Enforce

¶ 27 On January 12, 2024, the trial court held a status hearing on, *inter alia*, plaintiffs' September 7, 2023, motion to enforce; plaintiffs' November 30, 2023, motion to remove Lauren as trustee; and Lauren's motion to quash. The trial court, Judge Anderson, stated:

"I have a bunch of motions that are up today. I would rather just take these under advisement and rule on the briefs; but if there is something that you feel that you have to say, I'll let you say it on these various motions. Does anybody need to be heard or would you be willing to rest on your briefs?"

¶ 28 All parties, through their respective counsel, agreed to rest on their briefs. Lauren's counsel added: "From [Lauren's] position as trustee, she just wants to reiterate that she never reached an agreement in this matter and has not agreed to any settlement at this point. If the Court is going to rule by mail, that's perfectly fine, but I just wanted to reiterate the point." Plaintiffs' counsel added:

"[J]ust for the Court's consideration, the motion to quash, Your Honor, if the motion to enforce settlement is granted, ***, the motion to quash is largely moot[.] *** [I]n the event that the Court concludes there is no settlement, we would submit that the motion to quash should be denied because we are entitled to discover additional e-mails on

13

the same subject [as the August 22, 2023, e-mail disclosed by Lauren] that would tend to prove a settlement existed and what the terms of that are."

The trial court took the motions under advisement.

¶ 29 On January 24, 2024, the trial court entered a written order on several pending motions, providing:

"1. The motion to enforce settlement agreement, filed 9-7-23, is granted. An agreement was reached.

2. [Lauren's] motion to extend oral discovery is denied. ***.

3. Petition to remove [Lauren] as co-trustee is granted, given it appears that self-dealing and misconduct has occurred.

4. Motion to quash subpoenas is granted.

5. Clerk to notify.

6. Motion to deny relief for unclean hands is denied."

¶ 30 F. Motions to Reconsider the January 24, 2024, Judgment

¶ 31 On February 21, 2024, James moved for reconsideration, only as to the grant of the motion to enforce the settlement agreement. James argued that the documentary evidence did not establish that there had been a meeting of the minds in that James never agreed to be personally responsible to pay $325,000. James noted that he is not related to the settlors or the beneficiaries of the trust and has had little administrative involvement with the trust. He has not received funds from the trust and "has wanted nothing more in this case than to resign as [c]o-trustee and be dismissed." James represented that his attorney informed him by e-mail that she had verbal confirmation that plaintiffs would allow James to resign and that Lauren had agreed to pay $325,000. James informed his attorney that he agreed to those terms. James noted that his e-mails were protected

14

under attorney-client privilege but offered to provide them to the court *in camera*. At a minimum, an evidentiary hearing was needed.

¶ 32    James further noted that the June and July 2023 e-mails that plaintiffs alleged to constitute the terms of the agreement support his position that Lauren is to pay the entire $325,000 settlement amount. Specifically, on July 7, 2023, Weissbluth clarified that, because Lauren would essentially be returning her inheritance, she would need some assurance that there would be no taxes on an inheritance that she would never receive. The e-mail made no reference to James returning funds.

¶ 33    In the alternative, James asked the court to supply the missing term by implication that Lauren was to pay the entire sum. In support, he pointed to Weissbluth's comments about Lauren returning her inheritance and again offered to supply the privileged e-mails.

¶ 34    Also on February 21, 2024, Lauren filed a notice of appeal (No. 3-24-0131). On March 1, 2024, Lauren moved to dismiss the appeal with prejudice, noting that, on February 28, 2024, all parties had appeared in court on James's motion to reconsider and all parties would be responding to that motion. On March 12, 2024, this court granted Lauren's motion to dismiss her appeal.

¶ 35    On March 19, 2024, and March 20, 2024, Lauren filed two motions responding to James's motion to reconsider. First, she argued *pro se* that there never was an agreement. She attached an August 30, 2023, e-mail from Weissbluth, in which Weissbluth explained to Lauren: "[Y]our ongoing reluctance to settle [is] contrary to James' very clear position regarding settlement. Accordingly, I have a conflict of interest between my two clients and the ethical rules require that I withdraw." Second, she argued through counsel that she agreed with James's primary position that the order to enforce be vacated and the matter be set for an evidentiary hearing. She disagreed with James's position that the court should supply the missing term that she pay the entire $325,000 and James pay $0.

15

¶ 36 On March 21, 2024, plaintiffs responded to James's motion to reconsider. They argued that Lauren and James were both responsible for the $325,000 settlement. In plaintiffs' view, Lauren and James had authorized their attorneys to settle the case on their behalf, as demonstrated by the August 9, 2023, agreed order, and Lauren's August 22, 2023, e-mail. Whether Lauren was responsible for a greater share of the payment than James was an issue between them and did not concern plaintiffs. Plaintiffs summarized that Lauren and James cannot act through joint counsel, enter settlement through joint counsel to pay $325,000 in exchange for dismissal of the lawsuit against them, and then "seek to escape their obligations by citing [to] internal discord."

¶ 37 On April 2, 2024, Lauren replied to plaintiffs' response. She disagreed that the August 22, 2023, e-mail demonstrated that she authorized her attorney to settle. When she wrote, "We are so far from what I initially agreed to ... I disagree and cannot sign," she was not "expressing authority for her attorney to accept the settlement terms, in fact, it is quite the opposite. [She was] expressly rejecting that settlement."

¶ 38 On April 3, 2024, James replied to plaintiffs' response. He reiterated that his understanding of the agreement was that he would resign as co-trustee in exchange for dismissal of the lawsuit against him.

¶ 39 Also on April 3, 2024, plaintiffs replied to Lauren's reply. In it, they argued that the contents of the draft with which Lauren disagreed on August 22, 2023, were irrelevant. Plaintiffs had not sought to enforce that draft. Rather, they sought to enforce the terms set forth in the June and July 2023 e-mails.

¶ 40 On June 27, 2024, the trial court heard argument on James's motion to reconsider. It took the matter under advisement. On July 15, 2024, the court issued a written ruling, summarily stating that James's motion to reconsider was denied.

16

¶ 41 On July 24, 2024, Lauren filed a notice of appeal as a self-represented litigant as the enforcement of settlement pertained to the lawsuit against her individually (No. 3-24-0475). On August 12, 2024, James, through counsel, filed a notice of appeal as the enforcement of settlement pertained to the lawsuit against him as co-trustee (No. 3-24-0499). On October 30, 2024, this court granted James's unopposed motion to consolidate appeal Nos. 3-24-0475 and 3-24-0499.

¶ 42 Meanwhile, on July 24, 2024, plaintiffs filed a "cross-motion" to turnover assets. Plaintiffs sought to effectuate the terms of the enforcement order, including: the removal of co-trustees Lauren and James and the appointment of Georgene as the successor trustee, the turnover of trust assets in an amount not less than $742,704, and the payment of $325,000 by Lauren and James to plaintiffs' attorneys. Lauren and James objected, noting, *inter alia*, that the enforcement order was pending on appeal.

¶ 43 On August 16, 2024, the trial court, Judge Braun substituting for Judge Anderson, heard the motion for turnover. Plaintiffs argued, "Frankly, I don't think we're asking for anything that Judge Anderson hasn't already ruled." Plaintiffs further noted that, after the motion to reconsider was denied, there was no motion to stay enforcement. Lauren and James responded that, based on the brevity of Judge Anderson's orders, they still did not understand the terms of the alleged agreement, which they continued to contest. Of particular concern was the payment allocation of the $325,000 settlement amount.

¶ 44 On August 21, 2024, Judge Braun granted the motion for turnover on all points except the $325,000 payment. He ruled that enforcement of the $325,000 money judgment was stayed pending an order by the court determining whether liability is joint and several. He set a briefing schedule on the joint and several liability issue, which he stated would be decided by Judge Anderson upon his return. That same day, Lauren moved to reconsider.

17

¶ 45    On September 23, 2024, Judge Braun conducted a hearing at which he denied Lauren's motion to reconsider the August 21, 2024, order.  The question of joint and several liability was held over for Judge Anderson until that Friday (September 27, 2024).  On September 26, 2024, Lauren, acting as a self-represented litigant, filed a notice of appeal of the trial court's denial of her motion to reconsider (No. 3-24-0577).  On November 7, 2024, this court granted Lauren's unopposed motion to consolidate appeal Nos. 3-24-0475 (which had already been consolidated with No. 3-24-0499) and 3-24-0577.

¶ 46                         G. James's Jurisdictional Motion in this Court

                  and Underlying Collateral Motion to Clarify in the Trial Court

¶ 47    On January 7, 2025, James moved before *this* court to determine jurisdiction over the instant consolidated appeal.  James noted that he timely appealed the January 24, 2024, and July 15, 2024, judgments to preserve his rights on appeal, but he does not believe those judgments to be final because they fail to explain whether and to what extent a money judgment is to be entered against him.

¶ 48    According to James, on August 12, 2024, the date he filed his notice of appeal in No. 3-24-0499, Lauren provided his attorney, Friedland, with an e-mail from attorney Nugent which had been sent the prior year, on August 24, 2023.  That e-mail contained a draft settlement dated August 22, 2023, drafted by plaintiffs' counsel and with redlines by attorney Weissbluth.  Lauren wrote in her August 12, *2024*, e-mail to attorney Friedland that the redline draft demonstrates that attorney Fahey misled the court in the September 7, 2023, motion to enforce settlement because, in representing that "Lauren and James" had agreed to pay $325,000, Fahey submitted terms that "James never would have agreed to."  Instead, Lauren believed James to have agreed to the August 24, 2023, redline draft.

¶ 49    Relevant here, the August 24, 2023, redline draft provided: "Within fourteen (14) days of the execution of this Agreement, LAUREN, ~~JAMES, and/or COLLEEN~~ shall remit payment in the amount of THREE HUNDRED AND TWENTY-FIVE THOUSAND DOLLARS ($325,000.00)." (Strike-out in original.) Also: "[6]E. ~~JAMES and~~ LAUREN, ~~individually~~ **as resigning co-trustee**, shall personally bear the costs of any outstanding legal fees **to Harrison LLP (f/k/a Harrison & Held) incurred after June 1, 2023** relating to the administration of the NORMAN TRUST and/or RITA TRUST." (Emphases and strike-outs in original.)

¶ 50    On August 30, 2024, as a result of Lauren's disclosure of the redline draft, James filed a motion to clarify in the trial court that the January 24, 2024, enforcement order did not include a money judgment against James.

¶ 51    On September 27, 2024, the trial court, Judge Anderson, heard argument on James's motion to clarify and took the matter under advisement. A summary written order that same date confirms as much, although James did not attach a report of proceedings. On November 24, 2024, the parties appeared before Judge Anderson for oral ruling but he informed them that the matter was still under advisement. According to James, Judge Anderson never issued a ruling before ascending to the appellate court and "it does not appear that this matter has been assigned to a new courtroom."

¶ 52    James attached an appendix to his motion to determine jurisdiction, which included supporting documents generated after the August 12, 2024, notice of appeal. The appendix also contained a signed, verified affidavit by attorney Friedland, averring that James's recitation of the post-August 12, 2024, events were true to the best of her knowledge.

¶ 53    On January 14, 2025, plaintiffs responded to James's motion to determine jurisdiction. They disagreed with James's characterization that the orders to enforce were non-final. They

19

recounted that, on January 24, 2024, the trial court granted plaintiffs' motion to enforce against Lauren *and James* and, on July 15, 2024, the trial court *denied* James's motion to reconsider, which requested the trial court find that only Lauren agreed to pay $325,000 to plaintiffs.

¶ 54       On January 27, 2025, this court denied James's motion to determine jurisdiction without prejudice and directed the parties to address this court's jurisdiction in their appellate briefs.

¶ 55                                    II. ANALYSIS

¶ 56                                    A. Jurisdiction

¶ 57       Preliminarily, we address our appellate jurisdiction. "Every final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. Rule 301 (eff. Feb. 1, 1994). An order is not final if the court retains jurisdiction to determine a matter of substantial controversy. *In re Parentage of Rogan M.*, 2014 IL App (1st) 132765, ¶ 9. James argues the trial court's January 24, 2024, judgment to enforce lacks finality on the question of his obligation to pay the $325,000 settlement amount. James also asked us to determine, in his motion taken with the case, whether his August 30, 2024, motion to clarify defeats our appellate jurisdiction.

¶ 58       We determine that the trial court's January 24, 2024, judgment to enforce, read together with its July 15, 2024, denial of James's motion to reconsider finally resolved the question of payment allocation against James. In support, we note that, when the trial court does not explain its ruling, we may presume that it decided the disputed issues and facts in favor of the prevailing party. *National Acceptance Company of America v. Pintura Corp.*, 94 Ill. App. 3d 703, 707 (1981).

¶ 59       In the January 24, 2024, judgment, the trial court granted plaintiffs' motion to enforce the settlement agreement, which had requested that the court order "Lauren Collins *and* James Hupke to make payment in the amount of $325,000 to the Peck Ritchey, LLC Client Funds Account within seven (7) days." (Emphasis added.) In granting the motion, it denied James's request to

20

"deny [plaintiffs'] motion to enforce settlement [to the extent that it] obligates him personally to pay $325,000 to [plaintiffs]." On July 15, 2024, the trial court denied James's motion to reconsider and again rejected his argument that he had never agreed to pay the $325,000 settlement sum or any portion of it. Correspondingly, the trial court seemingly accepted plaintiffs' argument that the parties had agreed that Lauren and James would be jointly and severally liable for the $325,000 payment, the allocation of which was between them.

¶ 60    That Judge Braun did not discern the scope of Judge Anderson's orders does not undermine their finality. Rather, Judge Braun's August 21, 2024, refusal to order the $325,000 payment had the practical effect of staying that aspect of Judge Anderson's January 24, 2024, order to enforce. Judge Braun set the matter before Judge Anderson to clarify the payment-allocation aspect of his January 24, 2024, order. Judge Anderson was to hear the matter on September 27, 2024. However, in the interim, James filed the August 30, 2024, motion to clarify payment allocation. He attached evidence that was new to him, the redline draft. When the parties appeared before Judge Anderson on September 27, 2024, Judge Anderson heard argument on James's motion to clarify and did not, so far as the subsequent written order indicates, address the scope of his prior orders. Instead, he took the matter under advisement, where it remains unresolved since his ascension to the appellate court.

¶ 61    James's August 30, 2024, unresolved motion to clarify does not defeat our jurisdiction to review the direct appeal. In substance, the motion to clarify was a collateral attack on the January 24, 2024, order. For the purposes of this appeal, we need not decide whether James's August 30, 2024, pleading complied with the strictures for petitions for relief from judgment filed more than 30 days after the entry of judgment. See 735 ILCS 5/2-1401 (West 2022). Rather, it is enough to note that such collateral attacks do not defeat appellate jurisdiction over the initial appeal. See

21

*People v. Partee*, 125 Ill. 2d 24, 35-36 (1988) ("Since a collateral attack upon a judgment is a case separate and apart from the case in which the judgment has been attacked, *** the pendency or availability of the collateral remedy will not affect the jurisdiction of the appellate court over a direct appeal.")

¶ 62                                    B. The Order to Enforce the Settlement

¶ 63                                        1. Summary Judgment Procedure

¶ 64        Having established our jurisdiction, we proceed to review the order to enforce. We begin by recounting the procedure by which the trial court determined that there was an agreement and that Lauren and James had agreed to be jointly and severally liable for the $325,000 settlement amount. At the January 12, 2024, status hearing, the trial court noted that the parties had placed several motions before it, including the motion to enforce. It stated its preference to decide all of the motions on the pleadings, and none of the parties objected. As to the motion to enforce, the attachments to the pleadings included the June 14, 2023, to July 10, 2023, e-mails, which, in plaintiffs' view, constituted the written agreement for all material terms; the August 9, 2023, agreed order; and Lauren's August 22, 2023, e-mail to Weissbluth and Nugent, in which, in her view, she rejected plaintiffs' formal draft: "I disagree and cannot sign." From these pleadings and attachments, the trial court determined in a single sentence: "An agreement was reached." Lauren and James argue that the pleadings and attachments do not support, as a matter of law, that an agreement was reached (nor that its terms included a $325,000 settlement amount for which Lauren and James were jointly and severally liable). Plaintiffs do not expressly disagree that an evidentiary hearing might have resolved certain factual disputes but argue that Lauren and James waived any argument that an evidentiary hearing was required. We determine that plaintiffs carry

22

the burden to establish that they were entitled to a judgment on the pleadings regardless of whether Lauren and James requested an evidentiary hearing.

¶ 65 A motion to enforce a settlement agreement "can be a motion unto itself, albeit one not expressly authorized by the Code of Civil Procedure or supreme court rules." *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006). A settlement agreement is in the nature of a contract and is governed by principles of contract law. *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 313 (2009). For a settlement agreement to be enforceable, its material terms must be definite and certain. *Id.* A settlement agreement is sufficiently definite and certain "if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to." (Internal quotation marks omitted.) *Id.*

¶ 66 When the court's decision to grant or deny a motion to enforce a settlement agreement is made on the pleadings and attachments, without holding an evidentiary hearing, it is "best classified as a [grant or denial of] a motion for summary judgment concerning the issue of settlement." *Ramirez*, 366 Ill. App. 3d at 946. Summary judgment is proper if the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022); *Tafoya-Cruz v. Temperance Beer Company, LLC*, 2020 IL App (1st) 190606, ¶ 55. The pleadings and attachments are to be construed strictly against the movant and liberally in favor of the nonmovant. *Id.* If disputes over the formation and terms of a purported settlement agreement cannot be resolved as a matter of law, questions of fact remain and should be resolved at an evidentiary hearing or at trial. See *Ramirez*, 366 Ill. App. 3d 935.

We review *de novo* the trial court's decision to summarily enforce a settlement agreement. *Id.* at 946.

¶ 67 We are not persuaded by plaintiffs' argument that they were entitled to judgment as a matter of law because Lauren and James agreed to the trial court's stated preference to decide the matter on the pleadings. Even when both sides take the position that an issue may be decided on the pleadings without an evidentiary hearing or trial, it remains the *movants'* burden to establish that they are entitled to a judgment on the pleadings. *West Bend Mutual Insurance Co. v. Athens Construction Co., Inc.*, 2015 IL App (1st) 140006, ¶ 18; *Tafoya-Cruz*, 2020 IL App (1st) 190606, ¶ 55. Here, as James's counsel candidly recounted at oral argument, her response to plaintiffs' motion to enforce had been brief because she thought there was "no chance" plaintiffs' motion would be granted on the pleadings. Plaintiffs, in contrast, believed that their motion would be granted on the pleadings. However, plaintiffs requested that, if their motion was denied on the pleadings, they be permitted to discover additional e-mails to prove the existence and terms of the settlement.

¶ 68 The instant case is distinguishable from *K4 Enterprises*, 394 Ill. App. 3d at 318, where the defendants failed to preserve their claim that the trial court should have conducted an evidentiary hearing before granting the plaintiffs' motion to enforce the settlement agreement. In *K4 Enterprises*, the trial court witnessed the formation of the alleged settlement in chambers and it relied on its own memory of events such that it did not enter judgment solely on the pleadings and attachments. See *id*. at 316; see also *Steiner v. Eckert*, 2013 IL App (2d) 121290, ¶¶ 22-23 (the trial court did not err in granting a motion to enforce settlement pursuant to a summary proceeding where, prior to judgment, the non-movant did not raise a factual issue concerning the existence of the settlement or its terms). Similarly, we do not read *County Line Nurseries and Landscaping,*

24

*Inc. v. Glencoe Park District*, 2015 IL App (1st) 143776, to stand for the proposition that a movant may be entitled to judgment even where a material question of fact remains. To the extent that the *County Line* court suggested as much when it stated, "since the trial court decided who was to be believed based solely on competing affidavits, we will examine this same material to determine if the court was wrong as a matter of law," we simply disagree. *Id.* ¶ 32. An appellate court performing *de novo* review considers a question of law without deference to the trial court. See, *e.g.*, *Schuster v. Occidental Fire and Casualty Co.*, 2015 IL App (1st) 140718, ¶ 15. The appellate court does not, as the *County Line* quote arguably suggests, affirm the trial court merely because conflicting affidavits do not establish that the trial court was incorrect as a matter of law.

### 2. Questions of Fact Remain as to Existence and Terms

¶ 69    As to the existence of the settlement agreement, two of the three parties, plaintiffs and James, initially posited that there *was* an agreement. They just disagreed on its terms. Further, James's current position that we do not have jurisdiction and that we should first allow the trial court to resolve the issue of payment allocation is consistent with his apparent desire to preserve that portion of the agreement he contends allows him to resign as co-trustee and have the underlying suit against him dismissed. Plaintiffs, in turn, argue that the e-mails set forth various terms to which all sides agreed. The parties informed the court, in the August 9, 2023, agreed order, that they reached a settlement agreement. The motion to enforce the settlement agreement provided that Lauren and James had agreed to pay the $325,000 settlement amount, which was the same language used in the e-mails.

¶ 70    In the July 10, 2023, e-mail, plaintiffs' counsel termed the alleged agreement "an agreement in principle." An "agreement in principle," similar to a "letter of intent," signifies that the parties have agreed to general terms but anticipate further decisions to be made. *Empro*

25

*Manufacturing Co., Inc. v. Ball-Co Manufacturing, Inc.*, 870 F.2d 423, 424 (7th Cir. 1989). The parties may or may not intend to be bound by an "agreement in principle." *Id*. (citing *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120 (1985)). If the ultimate contract is to be based on substantially the same terms contained in the documents outlining an informal agreement, and the parties intend for the formal document to be prepared merely to memorialize the informal agreement, the bargain is binding. *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 143 (1986) (memorialization); *Chicago Investment Corp.*, 107 Ill. 2d at 126 (same terms). If, on the other hand, the parties do not intend to be bound until the execution and delivery of the formal agreement, there is no enforceable contract until such execution and delivery, even if the actual terms have been agreed on. *Ceres*, 114 Ill. 2d at 144. In those cases, formal execution is a condition precedent to enforcement. *Id*. at 143.

¶ 71      The parties may expressly provide that the negotiations or preliminary agreement is not binding until a formal agreement is executed. *Chicago Investment Corp.*, 107 Ill. 2d at 127. Absent a specific statement of intent, courts may look to the following factors to discern an intent to be bound, including whether: (1) the contract is one usually put into writing; (2) the amount of money involved is large or small; (3) the agreement requires a formal writing for the full expression of the terms; (4) whether there are few or many details; and (5) the negotiations or preliminary agreement itself contemplated a formal writing. *Ceres*, 114 Ill. 2d at 144; *Chicago Investment Corp.*, 107 Ill. 2d at 124.

¶ 72      Here, the preliminary agreement itself contemplated a formal execution (factor 5). The July 7, 2023, e-mail by Weissbluth accepted plaintiffs' offer contingent on two additional terms (the removal of James as co-trustee and tax consequences) and further provided: "Please note that our agreement to your terms is *contingent upon seeing a draft settlement agreement*, including

26

releases." (Emphasis added.) Similarly, the August 9, 2023, agreed order, which informed the court of the alleged settlement, employed similar language: "the Parties have reached a settlement agreement \*\*\* *subject to the execution of a written settlement agreement*." (Emphasis added.) While not dispositive, the words "subject to" strongly indicate that the parties do not intend to be bound until execution of a formal agreement. *Empro Manufacturing*, 870 F.2d at 425; see also *Interway, Inc. v. Alagna*, 85 Ill. App. 3d 1094, 1100-01 (1980). In addition, the agreed order sought to continue the case and place pending motions before the court in the event that a formal agreement was not executed: "All pending Motions are entered and continued"; "All briefing schedules are suspended"; "The matter is set for settlement status September 12, 2023." From this it may reasonably be inferred that, if the parties were unable to execute a formal agreement, the pending motions would be set for hearing and the briefing schedules in the underlying case would be reset. See *In re Marriage of Chatlin*, 153 Ill. App. 3d 810, 814 (1987) (the parties' agreement to continue the underlying case pending a formal execution of a settlement agreement weighs against finding an intent to be bound). For these reasons, we cannot hold that plaintiffs proved, as a matter of law, that there was an agreement.

¶ 73     However, neither can we affirmatively determine, as a matter of law, that there was no agreement. James has maintained throughout the case that the parties agreed, as established in phone calls and (undisclosed) e-mails by their respective attorneys that Lauren would be responsible for the payment and both Lauren and James would resign as co-trustees. In exchange, plaintiffs would dismiss the underlying lawsuit against them. Indeed, there is *some evidence* that James's version is correct, as set forth in the August 22, 2023, e-mail from Lauren to Weissbluth and Nugent. There, although Lauren disagreed with the formal draft of the agreement, she provided: "[T]his full settlement makes *my* $325,000 offer more." (Emphasis added.) In addition,

27

Weissbluth's July 7, 2023, e-mail reflects her understanding that *at least a portion* of the $325,000 settlement represented the return of Lauren's inheritance. The reference to a premature disbursement and inheritance implicates only Lauren. Moreover, plaintiffs were unable to submit additional proof of the agreement when the trial court granted Lauren's motion to quash, presumably finding the motion moot after summarily granting the motion to enforce. In our view, the trial court's decision was in haste and additional evidence was required to determine the existence and terms of the alleged agreement.

¶ 74 Plaintiffs argue that the trial court correctly found James jointly and severally liable for the settlement amount, because joint and several liability is the law in Illinois. See *e.g.*, *Winger v. Chicago City Bank & Trust Co.*, 394 Ill. 94, 111-12 (1946) ("equity holds defaulting trustees jointly liable and will not permit one trustee to sit idly by and acquiesce in the fraudulent actions of another trustee; and this is particularly true where benefits accrue to him by reason of such acquiescence"). However, plaintiffs' argument ignores that the underlying lawsuit did not result in a judgment against Lauren or James for fraud or breach of fiduciary duty. Rather, the instant case concerns a settlement to *dismiss* an action for fraud and breach of fiduciary duty. Even if the underlying case had proceeded to judgment against James, it is not certain that the trial court would have found him jointly and severally liable for $325,000.

¶ 75 To be sure, "a trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of: (1) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or (2) the value of any benefit received by the trustee by reason of the breach." 760 ILCS 3/1002 (a) (West 2020). Still, it is within the court's equitable powers to issue the relief it deems appropriate. 760 ILCS 3/1001(c) (West 2020) ("Nothing in this Section limits the equitable powers of the court to order *other*

28

*appropriate relief*" (emphasis added.)) Among the available remedies are removal of the trustee, compelling a trustee to redress a breach by paying money or restoring funds, or *tracing trust property wrongfully disposed of* to recover the property or its proceeds. 760 ILCS 3/1001(b)(3), (7), (9) (West 2020). Tracing presumably remains a viable solution at this juncture, given that Lauren testified in deposition that she invested her premature disbursement and that she continued to have access to those funds. In contrast, plaintiffs have not alleged that James benefited by reason of his acquiescence; they did not even seek his removal as co-trustee in their opening settlement offer.

¶ 76    Plaintiffs have also argued throughout the proceedings that attorney Weissbluth had authority to agree on behalf of Lauren and James that they be jointly and severally liable for the $325,000 settlement amount, even if neither of them agreed to that term. Assuming for the sake of analysis that Weissbluth agreed that Lauren and James be jointly and severally liable for the $325,000 payment, plaintiffs have not established that Weissbluth had the authority to do so. Plaintiffs argue, incorrectly, that the presumption lies in their favor: "In general, a client is bound by the acts or omissions of his attorney within the scope of the attorney's authority." *Sakun v. Taffer*, 268 Ill. App. 3d 343, 351 (1994) (raising the question of authority in a section 2-1401 petition).

¶ 77    In fact, when a settlement is reached out of court, and is not made part of a subsequent judgment, the attorney's authority to settle the case will *not* be presumed. *Brewer v. National Railroad Passenger Corp.*, 165 Ill. 2d 100, 105 (1995). The party alleging that opposing counsel had authority to settle the case on given terms has the burden of proving that authority. *Lukanty v. Moglinicki*, 2022 IL App (1st) 210794, ¶ 34. Here, the alleged settlement was reached out-of-court. Although the parties notified the court in the agreed order that they had reached a settlement

"subject to" execution of a written agreement, its terms were never incorporated into a subsequent judgment. As such, Weissbluth's authority to agree that Lauren and James be jointly and severally liable for the $325,000 payment cannot be presumed.

¶ 78    We disagree with plaintiffs' inherent position that, because James generally agreed for Weissbluth to negotiate and settle the case on his behalf, he must be bound by a term that he may not have authorized—payment of $325,000. An attorney's authority to settle a case is conditioned on the client's parameters as to amount and other material terms. See, *e.g.*, *Brewer*, 165 Ill. 2d at 103, 107 (it was error to enforce the settlement agreement where the plaintiff authorized his attorney to accept the $250,000 monetary settlement but did not authorize his attorney to accept the condition that he quit his job with the defendant); *Lukanty*, 2022 IL App (1st) 210794, ¶ 38 (differing representations as to the settlement amount, being $25,000 or $30,000, supported that the attorney did not have authority to settle the plaintiff's case).

¶ 79    In sum, on January 24, 2024, the trial court, Judge Anderson, granted plaintiffs' motion to enforce a settlement agreement. When read in conjunction with its July 15, 2024, denial of James's motion to reconsider, it is clear that the January 24, 2024, order included a finding that Lauren and James were jointly and severally liable for the $325,000 settlement amount. On August 21, 2024, the trial court, Judge Braun, entered an order for the turnover of trust assets but effectively stayed the enforcement of the $325,000 payment. On September 27, 2024, the trial court, Judge Anderson, took under advisement a collateral challenge to his prior finding on the question of payment allocation, which does not affect our jurisdiction. However, for the reasons stated herein, we determine that plaintiffs failed to establish that they were entitled to a judgment on the pleadings regarding their motion to enforce the settlement agreement. We reverse the trial court's order to enforce the settlement. We express no further opinion as to whether the parties may prove

or refute the existence and terms of a settlement agreement on remand, nor do we express any opinion as to the merits of the underlying lawsuit.

¶ 80                                  III. CONCLUSION

¶ 81        The judgment of the circuit court of Will County is reversed and remanded.

¶ 82        Reversed and remanded.